132 T.C. No. 11

UNITED STATES TAX COURT

SUZANNE L. PORTER a.k.a. SUZANNE L. HOLMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13558-06.              Filed April 23, 2009.

P applied for relief from joint and several
liability for additional tax under sec. 72(t), I.R.C.,
related to a distribution her husband received from his
individual retirement account.  R denied P's
application for relief.  P petitioned this Court to
seek our determination whether she is entitled to
relief under sec. 6015(f), I.R.C.

<u>Held</u>:  In determining whether P is entitled to
equitable relief under sec. 6015(f), I.R.C., we apply a
de novo standard of review, not an abuse of discretion
standard of review.

<u>Held</u>, <u>further</u>:  P is entitled to equitable relief
under sec. 6015(f), I.R.C.

Suzanne L. Porter a.k.a. Suzanne L. Holman, pro se.

<u>Kelly R. Morrison-Lee</u> and <u>Ann M. Welhaf</u>, for respondent.

HAINES, <u>Judge</u>:  Respondent determined that petitioner is not entitled to relief from joint and several income tax liability for 2003 with respect to an early distribution from her ex-husband's individual retirement account (IRA).[1]  In <u>Porter v. Commissioner</u>, 130 T.C. 115, 117 (2008), we held that in determining whether petitioner is entitled to relief under section 6015(f), we conduct a trial de novo and we may consider evidence introduced at trial which was not included in the administrative record.  We then denied respondent's motion in limine seeking to limit petitioner's right to introduce evidence outside the administrative record.  The issues remaining for decision are:  (1) Whether in determining petitioner's eligibility for relief under section 6015(f) we use a de novo standard of review or review for abuse of discretion; and (2) whether petitioner is entitled to equitable relief under section 6015(f).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the exhibits attached thereto, and the stipulation of settled issues are incorporated herein by this reference.  At the time she filed her petition, petitioner resided in Maryland.

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code, as amended.  Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

Petitioner holds a bachelor of science degree in business administration from the University of Maryland. In 1994 she married John S. Porter. Together, they had two children. Sometime in 2002 petitioner was wrongfully discharged from her job with the Federal Government. Before returning to Government employment petitioner was employed as a bus driver.

Petitioner was not aware of Mr. Porter's finances during 2003. They maintained separate checking accounts and credit cards. Petitioner did not review the monthly bank statements, nor did she pick up the daily mail. Mr. Porter was responsible for the home mortgage and car insurance payments. Petitioner was responsible for paying all other home expenses, including groceries, which she paid for with her credit cards.

During 2003 petitioner received $24,285 in wages and unemployment compensation. During 2003 Mr. Porter earned $12,765 in nonemployee compensation. He also received a $10,700 distribution from his IRA. Petitioner did not know of the distribution at the time it was made because Mr. Porter refused to tell petitioner about his income for 2003.

Before 2003 Mr. Porter was responsible for filing the couple's tax returns. He also prepared the couple's 2003 joint Form 1040, U.S. Individual Income Tax Return. The return reported Mr. Porter's IRA distribution and petitioner's wages and unemployment compensation. Mr. Porter's nonemployee compensation was not reported on the return. He gave the return to petitioner to sign on April 15, 2004, the day it was due. Because Mr.

Porter was pressuring her to sign the return quickly so he could get it to the post office, petitioner reviewed the return in haste, ensuring that her own income was properly reported. Six days after petitioner signed the return, on April 21, 2004, she and Mr. Porter legally separated.[2]

On June 20, 2005, respondent issued petitioner and Mr. Porter statutory notices of deficiency for 2003. Respondent adjusted their 2003 income to include $12,765 in nonemployee compensation attributable to Mr. Porter. Respondent also adjusted their 2003 income tax to include 10-percent additional tax of $1,070 with respect to Mr. Porter's IRA distribution pursuant to section 72(t)(1). Neither petitioner nor Mr. Porter petitioned this Court for redetermination of the deficiency.

In subsequent years petitioner has complied with all income tax laws. After their separation petitioner discovered that Mr. Porter had not filed their joint Federal income tax return for 2002. Petitioner promptly filed her own return for 2002, choosing married-filing-separately status.

On December 1, 2005, petitioner filed a Form 8857, Request for Innocent Spouse Relief. On June 14, 2006, respondent's Appeals officer issued a final determination regarding petitioner's request for relief. The Appeals officer determined that pursuant to section 6015(c) petitioner was entitled to relief from joint and several liability with respect to the $12,765 in unreported nonemployee compensation. However,

_____

[2]A judgment of absolute divorce was entered on May 16, 2006.

petitioner was denied relief under section 6015(b), (c), and (f) from the 10-percent additional tax of $1,070 on Mr. Porter's IRA distribution. The Appeals officer determined that petitioner knew or had reason to know the 10-percent additional tax was not reported on the couple's return. On January 31, 2007, as a result of debt from her marriage, petitioner filed for bankruptcy.[3]

Mr. Porter did not intervene in this case, though he was given the opportunity to do so under section 6015(e)(4). See Van Arsdalen v. Commissioner, 123 T.C. 135, 143 (2004). Rather, respondent called him as a witness at trial. He had not previously participated in petitioner's administrative hearing.

OPINION

I.   Section 6015(f)

Petitioner contends that under section 6015(f) she qualifies for relief from joint and several liability for the 10-percent additional tax on Mr. Porter's early distribution from his IRA. When a husband and wife file a joint Federal income tax return,

---

[3]A final decree in petitioner's bankruptcy case was issued on May 8, 2007, lifting the automatic stay imposed pursuant to 11 U.S.C. sec. 362(a)(8). Trial was held on Mar. 27, 2007, before the automatic stay was lifted. Respondent was not aware and the Court was not otherwise notified of petitioner's bankruptcy petition. The parties subsequently filed a joint motion for relief from the automatic stay, nunc pro tunc, with the U.S. Bankruptcy Court for the District of Maryland. The bankruptcy court granted the joint motion and ordered "that the automatic stay be lifted in order that * * * [petitioner] may seek innocent spouse relief from the United States Tax Court, nunc pro tunc; and * * * that * * * [petitioner's] innocent spouse Tax Court proceedings and any orders and opinions issued therewith are not void as violating the automatic stay."

they generally are jointly and severally liable for the tax due. Sec. 6013(d)(3); <u>Butler v. Commissioner</u>, 114 T.C. 276, 282 (2000). However, a spouse may qualify for relief from joint and several liability under section 6015(b), (c), or (f) if various requirements are met. The parties stipulated that petitioner does not qualify for relief from joint and several liability on the 10-percent additional tax under section 6015(b) or (c).

A taxpayer qualifies for relief under section 6015(f) if relief is not available under section 6015(b) or (c) and, in the light of the facts and circumstances, it is inequitable to hold the taxpayer liable for the tax or deficiency. This Court has jurisdiction to determine whether a taxpayer is entitled to equitable relief under section 6015(f). Sec. 6015(e)(1)(A). Our determination is made in a trial de novo. <u>Porter v. Commissioner</u>, 130 T.C. at 117. Therefore, we may consider evidence introduced at trial which was not included in the administrative record. Both parties submitted evidence at trial which was not available to respondent's Appeals officer.

II. <u>The Standard of Review</u>

We have generally reviewed the Commissioner's denial of relief under section 6015(f) for abuse of discretion.[4] See <u>Jonson v. Commissioner</u>, 118 T.C. 106, 125 (2002), affd. 353 F.3d

---

[4]To prevail under this standard of review, the taxpayer has the burden of proving that the Commissioner's determination was arbitrary, capricious, or without sound basis in fact or law. <u>Jonson v. Commissioner</u>, 118 T.C. 106, 113, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003); <u>Butler v. Commissioner</u>, 114 T.C. 276, 291-292 (2000).

1181 (10th Cir. 2003); Butler v. Commissioner, supra; cf. Wiener v. Commissioner, T.C. Memo. 2008-230 (abuse of discretion standard not applied where notice of determination did not recite any analysis or factual determinations to review).  In their concurring opinions in Porter v. Commissioner, supra at 142-146, Judges Goeke and Wherry contended that our existing precedent with respect to the standard of review in section 6015(f) cases is no longer applicable in the light of the 2006 amendments to section 6015.  Judge Wherry urged the Court to adopt a de novo standard of review when the merits of this case would be decided.[5]  Id. at 144.

Congress enacted section 6015 as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201, 112 Stat. 734.[6]  Section 6015(f) provides that the Commissioner "may" grant relief under certain circumstances, suggesting a grant of relief is discretionary.  In its original form section 6015(e) granted us jurisdiction to determine appropriate relief under section 6015(b) and (c) but was silent as to our jurisdiction under section 6015(f).  In Butler v. Commissioner, supra, we considered whether we had jurisdiction to review the Commissioner's denial of equitable

---

[5]In Porter v. Commissioner, 130 T.C. 115, 122 n.10 (2008), we expressly reserved any determination regarding the appropriate standard of review in sec. 6015(f) cases because our determination of the proper scope of review was not dependent on the standard of review.

[6]Sec. 6015 replaced sec. 6013(e), which provided for a spouse to be relieved from joint and several liability under certain limited circumstances.

relief under section 6015(f) or whether the granting of relief was committed solely to agency discretion.

In the absence of any clear guidance from Congress, we held that we had jurisdiction to review the Commissioner's determinations but should review for abuse of discretion because of the discretionary language in section 6015(f).  Butler v. Commissioner, supra; see Porter v. Commissioner, supra at 143 (Goeke, J. concurring).  Under the statutory framework provided by Congress at the time, our adoption of an abuse of discretion standard was appropriate.  Porter v. Commissioner, supra at 143 (Goeke, J. concurring).

Our assertion of jurisdiction over cases brought under section 6015(e) and (f) by individuals against whom no deficiency had been asserted was reversed by the U.S. Courts of Appeals for the Eighth Circuit and for the Ninth Circuit.  See Bartman v. Commissioner, 446 F.3d 785, 787 (8th Cir. 2006), affg. in part and vacating in part T.C. Memo. 2004-93; Commissioner v. Ewing, 439 F.3d 1009 (9th Cir. 2006), revg. 118 T.C. 494 (2002) and vacating 112 T.C. 32 (2004); see also Billings v. Commissioner, 127 T.C. 7 (2006).  However, in 2006 Congress amended section 6015(e)(1) to confirm our jurisdiction to determine the appropriate relief available under section 6015(f).  Tax Relief and Health Care Act of 2006, Pub. L. 109-432, div. C, sec. 408(a), 120 Stat. 3061.  Given Congress's confirmation of our jurisdiction, reconsideration of the standard of review in section 6015(f) cases is warranted.

Amended section 6015(e)(1) provides that "In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply, or in the case of an individual who requests equitable relief under subsection (f)", the Court has jurisdiction "to <u>determine</u> the appropriate relief available to the individual under this section". (Emphasis added.) The use of the word "determine" suggests that Congress intended us to use a de novo standard of review as well as scope of review. In other instances where the word "determine" or "redetermine" is used, as in sections 6213 and 6512(b), we apply a de novo scope of review and standard of review. See <u>Porter v. Commissioner</u>, 130 T.C. at 118-119.

Nothing in amended section 6015(e) suggests that Congress intended us to review for abuse of discretion. In similar circumstances, Congress expressly provided that we review the Commissioner's determinations for abuse of discretion. Before 1996 the Commissioner was granted the authority to abate assessments of interest in certain circumstances. Sec. 6404(e) (as in effect for tax years beginning on or before July 30, 1996). Under that statutory framework, we lacked jurisdiction to determine whether interest abatement was warranted. See <u>Beall v. United States</u>, 336 F.3d 419, 425 (5th Cir. 2003); <u>508 Clinton St. Corp. v. Commissioner</u>, 89 T.C. 352, 354 (1987). Congress then amended section 6404 by expressly granting us jurisdiction "to determine whether the Secretary's failure to abate interest * * * <u>was an abuse of discretion</u>". (Emphasis added.) Taxpayer Bill of

Rights 2, Pub. L. 104-168, sec. 302, 110 Stat. 1457 (1996); see Hinck v. United States, 550 U.S. 501 (2007) (holding that this Court is the exclusive forum for judicial review of the Commissioner's refusal to abate interest, abrogating Beall v. United States, supra).

Section 6015(e) was amended in a similar historical context. Sections 6015(f) and 6404(e) are taxpayer relief provisions. Under each provision the decision whether to grant relief (in the form of an interest abatement or relief from joint and several liability) was committed largely to agency discretion, and it had been determined that we lacked jurisdiction over a claim brought by a taxpayer under each provision. See Commissioner v. Ewing, 439 F.3d 1009 (9th Cir. 2006) (Court of Appeals determined that this Court lacked jurisdiction over cases brought under section 6015(f)); 508 Clinton St. Corp. v. Commissioner, supra (this Court lacked jurisdiction over interest abatement claim).

In amending section 6404, Congress provided us jurisdiction over interest abatement cases but expressly limited our jurisdiction to reviewing whether the Commissioner's failure to abate interest was an abuse of discretion. Sec. 6404(h). In amending section 6015(e), Congress provided us jurisdiction over cases brought under section 6015(f). But unlike the amendment to section 6404, the amendment to section 6015(e) gives no indication that we should review the Commissioner's determination for abuse of discretion. Congress's failure to include any such limitation in section 6015(e) when it had previously included the

limitation in a similar situation indicates that our jurisdiction is not limited to reviewing the Commissioner's determination for abuse of discretion.  See Franklin Natl. Bank v. New York, 347 U.S. 373, 378 (1954) ("We find no indication that Congress intended to make this phase of national banking subject to local restrictions, as it has done by express language in several other instances.").

An abuse of discretion standard of review is also at odds with our decision to decline to remand section 6015(f) cases for reconsideration.  Friday v. Commissioner, 124 T.C. 220, 222 (2005).  Section 6330 is analogous to section 6015(f) insofar as both sections consider economic hardship as a factor in determining whether relief is appropriate.  In section 6330(d)(2) Congress provided that the Internal Revenue Service Office of Appeals would retain jurisdiction over collection cases to allow it to consider changes in the taxpayers' circumstances. That Congress did not include a similar provision in section 6015 is consistent with the requirement that we determine whether relief for taxpayers under section 6015(f) is appropriate.  See Friday v. Commissioner, supra at 222 ("There is in section 6015 no analog to section 6330 granting the Court jurisdiction after a hearing at the Commissioner's Appeals Office.").

We have always applied a de novo scope and standard of review in determining whether relief is warranted under subsections (b) and (c) of section 6015.  See, e.g., Alt v. Commissioner, 119 T.C. 306, 313-316 (2002), affd. 101 Fed. Appx.

34 (6th Cir. 2004). We believe that cases in which taxpayers seek relief under section 6015(f) should receive similar treatment and thus the same standard of review. Given Congress's direction that we determine the appropriate relief available under subsections (b), (c), and (f), there is no longer any reason to apply a different standard of review under subsection (f) than under subsections (b) and (c), and we shall no longer do so.

Accordingly, in cases brought under section 6015(f) we now apply a de novo standard of review as well as a de novo scope of review. Petitioner bears the burden of proving that she is entitled to equitable relief under section 6015(f). See Rule 142(a). The Commissioner analyzes petitions for section 6015(f) relief using the procedures set forth in Rev. Proc. 2003-61, 2003-2 C.B. 296. See Banderas v. Commissioner, T.C. Memo. 2007-129. The parties have not disputed application of the conditions and factors listed in the revenue procedure.

The Commissioner generally will not grant relief unless the taxpayer meets seven threshold conditions. Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297. Respondent concedes that petitioner meets these conditions. If a taxpayer meets the threshold conditions, the Commissioner considers several factors to determine whether a requesting spouse is entitled to relief under section 6015(f). Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298. We consider all relevant facts and circumstances in determining whether the taxpayer is entitled to relief. Sec.

6015(e) and (f)(1). The following factors are relevant to our inquiry.

III. Factors Relating to Petitioner's Claim for Relief

    A.    Petitioner and Mr. Porter Are Divorced

Petitioner and Mr. Porter legally separated on April 21, 2004, 6 days after she signed the couple's 2003 return. They divorced on May 16, 2006. This factor favors relief.[7]

    B.    Petitioner Would Suffer Economic Hardship If Relief Were Not Granted

Economic hardship is present if payment of tax would prevent the taxpayer from paying her reasonable basic living expenses. Sec. 301.6343-1(b)(4)(i) and (ii), Proced. & Admin. Regs. The determination varies according to the unique circumstances of the taxpayer. Id.

Petitioner earns a modest income. She is the mother of two children. She has a bachelor of science degree in business administration, and presumably she will be able to be employed for many more years. Because of debts she was left with after her separation and divorce from Mr. Porter, petitioner has been unable to meet her monthly expenses. Consequently, she was forced to file for bankruptcy. If relief were not granted, petitioner would be jointly liable for paying $1,070 plus related interest.

---

[7]In analyzing such factors as the taxpayer's marital status, whether the taxpayer would suffer hardship, and whether the taxpayer has complied with income tax laws in subsequent years, our inquiry is directed to the taxpayer's status at the time of trial.

Under these circumstances, we conclude that petitioner would suffer economic hardship if relief were not granted.  This factor favors relief.

    C.    <u>Petitioner Had Reason To Know of the Item Giving Rise to the Deficiency</u>

In the case of an income tax liability resulting from a deficiency, we are less likely to grant relief under section 6015(f) if the requesting spouse knew or had reason to know of the item giving rise to the deficiency.  If the requesting spouse did not know or have reason to know, we are more likely to grant relief.

A taxpayer who signs a return is generally charged with constructive knowledge of its contents.  <u>Hayman v. Commissioner</u>, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228.  In establishing that a taxpayer had no reason to know, the taxpayer must show that she was unaware of the circumstances that gave rise to the error and not merely unaware of the tax consequences.  <u>Bokum v. Commissioner</u>, 94 T.C. 126, 145-146 (1990), affd. 992 F.2d 1132 (11th Cir. 1993); <u>Purcell v. Commissioner</u>, 86 T.C. 228, 237-238 (1986), affd. 826 F.2d 470, 473-474 (6th Cir. 1987).  Section 6015 does not protect a spouse who turns a blind eye to facts readily available to her.  <u>Charlton v. Commissioner</u>, 114 T.C. 333, 340 (2000); <u>Bokum v. Commissioner</u>, <u>supra</u>.  In such instances, we may impute the requisite knowledge to the putative innocent spouse unless she satisfies her duty of inquiry.  <u>Hayman v. Commissioner</u>, <u>supra</u> at 1262; <u>Adams v. Commissioner</u>, 60 T.C. 300, 303 (1973).

Mr. Porter presented the couple's income tax return to petitioner to sign on April 15, 2004, the day it was due. Petitioner scanned the contents of the return only to ensure that her own income was reported correctly, which it was. Petitioner relied on Mr. Porter to prepare the return properly with respect to his own income. Petitioner's reliance was misplaced. Nevertheless, petitioner signed a return which clearly shows that Mr. Porter received an IRA distribution during 2003. Despite Mr. Porter's reluctance to discuss his finances with petitioner, we presume she knew that Mr. Porter had not reached the age of 59½, so as to except the distribution from the section 72(t) additional tax.

Accordingly, petitioner had reason to know of Mr. Porter's IRA distribution. This factor favors not granting petitioner relief.

D. <u>Petitioner Did Not Receive a Significant Benefit Beyond Normal Support From the Item Giving Rise to the Deficiency</u>

Receipt by the requesting spouse, either directly or indirectly, of a significant benefit in excess of normal support from the unpaid liability or the item giving rise to the deficiency weighs against relief. Lack of a significant benefit beyond normal support weighs in favor of relief. Normal support is measured by the circumstances of the particular parties. <u>Estate of Krock v. Commissioner</u>, 93 T.C. 672, 678-679 (1989).

Mr. Porter testified that he used the proceeds from his IRA distribution to pay petitioner's credit card debt. Petitioner

testified that she does not know how Mr. Porter spent the distribution from his IRA but that he did not use the proceeds to pay her credit card debt. We evaluated petitioner's and Mr. Porter's testimonies by observing their candor, sincerity, and demeanor. Mr. Porter was not credible. Petitioner was, and we accept her testimony.

However, even if we were to accept Mr. Porter's testimony that he used the proceeds of the IRA distribution to pay petitioner's credit card debt, he admitted that a portion of the credit card charges related to grocery shopping; i.e. normal support. Petitioner earned a very modest income during 2003 after being wrongfully discharged from her job. Therefore, it is reasonable to conclude that petitioner used her credit cards for necessary services and supplies in addition to groceries.

We conclude that petitioner did not receive a significant benefit beyond normal support from Mr. Porter's IRA distribution. This factor favors relief.

E.  Petitioner Complied With All Income Tax Laws in Subsequent Tax Years

Petitioner has complied with income tax laws in all subsequent years. Furthermore, upon discovering that her husband had neglected to file the couple's joint Federal income tax return for 2002, she promptly filed her own return, choosing married-filing-separately status. This factor favors relief.

IV. Conclusion

Factors favoring relief are that petitioner and Mr. Porter are divorced, that she would suffer hardship if relief were not

granted, that she did not receive a significant benefit beyond normal support from the IRA distribution, and that she diligently complied with income tax laws in subsequent years. That petitioner had reason to know of the distribution because it appears on the face of the return favors not granting relief.

Under an abuse of discretion standard, this Court has upheld the Commissioner's denial of relief under section 6015(f) where the taxpayer knew or had reason to know of the item giving rise to the deficiency or that the tax would not be paid. See, e.g., Magee v. Commissioner, T.C. Memo. 2005-263; Simon v. Commissioner, T.C. Memo. 2005-220; Sjodin v. Commissioner, T.C. Memo. 2004-205, vacated 174 Fed. Appx. 359 (8th Cir. 2006); Demirjian v. Commissioner, T.C. Memo. 2004-22. However, we are no longer restricted to determining whether the Commissioner's determination was an abuse of discretion. Under a de novo standard of review, we take into account all the facts and circumstances and determine whether it is inequitable to hold the requesting spouse liable for the unpaid tax or deficiency.

We recognize that petitioner had reason to know of the IRA distribution because she signed the return and did not inquire into its contents. However, this factor is tempered by the fact that petitioner regularly inquired into Mr. Porter's finances during the preceding year and he refused to answer or answered evasively.

The other factors discussed above which favor relief outweigh petitioner's reason to know of her husband's IRA

distribution.  Accordingly, petitioner has met her burden of proving by the preponderance of the evidence that it would be inequitable to hold her liable for the section 72(t) additional tax on Mr. Porter's IRA distribution.

To reflect the foregoing,

Decision will be entered

for petitioner.

Reviewed by the Court.

COLVIN, VASQUEZ, GALE, MARVEL, GOEKE, WHERRY, KROUPA, and PARIS, JJ., agree with this majority opinion.

GALE, J., concurring:  I agree with the position taken in the majority opinion that de novo review is the appropriate standard of review in determining entitlement to relief under section 6015(f).[1]  I write separately to highlight certain other factors that support that position.

First, the statute is unclear in prescribing a standard of review.  While, as the majority acknowledges, the articulation in section 6015(f) that under certain conditions the Secretary "may" relieve an individual of liability is suggestive that review should be for abuse of discretion, the use of "may" in section 6015(f) is not dispositive.  Internal Revenue Code sections providing that the Secretary "may" take an action have sometimes been interpreted as mandating review for abuse of discretion, see, e.g., sec. 482; Ballentine Motor Co. v. Commissioner, 321 F.2d 796, 800 (4th Cir. 1963), affg. 39 T.C. 348 (1962); Dolese v. Commissioner, 82 T.C. 830, 838 (1984), affd. 811 F.2d 543, 546 (10th Cir. 1987); Foster v. Commissioner, 80 T.C. 34, 142-143 (1983), affd. in part and vacated in part on another issue 756 F.2d 1430 (9th Cir. 1985); Ach v. Commissioner, 42 T.C. 114, 125-126 (1964), affd. 358 F.2d 342 (6th Cir. 1966), and sometimes de novo review, see, e.g., sec. 269(a);[2] VGS Corp. v. Commissioner,

---

[1]It is worth noting that, while 9 Judges have voted "yes" and 8 have voted "no" in this case, two of the "no" votes agree with the majority with respect to the standard of review.  Thus, the number of Judges supporting the application of a de novo standard of review is 11 and the number opposing it is 6.

[2]The standard of review applied with respect to the "may" language in sec. 269(a) is noteworthy in that the "may" language
(continued...)

68 T.C. 563, 595-598 (1977); <u>Capri, Inc. v. Commissioner</u>, 65 T.C. 162, 178 (1975); <u>D'Arcy-MacManus & Masius, Inc. v. Commissioner</u>, 63 T.C. 440, 449 (1975); <u>Indus. Suppliers, Inc. v. Commissioner</u>, 50 T.C. 635, 645-646 (1968); <u>Inductotherm Indus., Inc. v. Commissioner</u>, T.C. Memo. 1984-281, affd. without published opinion 770 F.2d 1071 (3d Cir. 1985).

Moreover, our grant of jurisdiction to review the Secretary's (or Commissioner's) decisions concerning equitable relief is contained not in section 6015(f) but in section 6015(e)(1)(A), which provides that the Tax Court shall have jurisdiction "to determine the appropriate relief available to the individual under this section".  This broad phrasing[3] must be compared, as the majority notes, to another discrete grant of jurisdiction to the Court, a mere 2 years earlier, to review the Secretary's decisions not to abate interest.  That grant, now codified in section 6404(h)(1),[4] is explicit with respect to the standard of review:  "The Tax Court shall have jurisdiction * * * to determine whether the Secretary's failure to abate interest under this section was an abuse of discretion".  When the general terms of section 6015(e)(1)(A) are compared with the specificity

---

[2](...continued)
in the statute had previously been "shall".  See Revenue Act of 1964, Pub. L. 88-272, sec. 235(c)(2), 78 Stat. 126.

[3]I emphasize here the entire quoted phrase from sec. 6015(e)(1)(A), not just the verb "determine", on which the majority places singular emphasis.

[4]The grant of Tax Court jurisdiction was originally codified as sec. 6404(g)(1).  Taxpayer Bill of Rights 2 (TBOR 2), Pub. L. 104-168, sec. 302(a), 110 Stat. 1457 (1996).

of the standard enunciated in section 6404(h)(1), Congress's intention regarding the review standard in the former becomes less clear.[5]  To suggest that the "may" in section 6015(f) settles the matter in this context puts more freight on that word than it can carry.[6]

Second, given the statute's lack of clarity regarding the standard of review, consideration of the legislative history is appropriate.  The history of amendments to the joint and several liability relief provisions since the original enactment in 1971

---

[5]A similar contrast emerges in the legislative history of secs. 6320 and 6330 as compared to the legislative history of sec. 6015(e)(1)(A).  These Code sections were all enacted as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, secs. 3401 and 3201, 112 Stat. 734, 746.  The legislative history underlying secs. 6320 and 6330 specifies that courts are to apply an abuse of discretion standard in reviewing IRS collection determinations and a de novo standard in reviewing determinations of tax liability.  H. Conf. Rept. 105-599, at 266 (1998), 1998-3 C.B. 755, 1020; see Giamelli v. Commissioner, 129 T.C. 107, 111 (2007).  Thus, the legislative history of sec. 6330 makes clear that, to the extent specified therein, we must apply a deferential standard of review.  See Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  In contrast, the legislative history underlying sec. 6015(e)(1)(A) does not specify the standard of review.  See H. Conf. Rept. 105-599, supra at 250-251, 1998-3 C.B. at 1004-1005.

[6]In describing the Secretary's authority to grant equitable relief, the legislative history puts no emphasis on administrative discretion:

> The conferees do not intend to limit the use of the Secretary's authority to provide equitable relief to situations where tax is shown on a return but not paid.  The conferees intend that such authority be used where, taking into account all the facts and circumstances, it is inequitable to hold an individual liable for all or part of any unpaid tax or deficiency arising from a joint return.  * * * [H. Conf. Rept. 105-599, supra at 254, 1998-3 C.B. at 1008.]

evidences congressional dissatisfaction with the adequacy of relief afforded taxpayers. The 1971 version of "innocent spouse" relief provided relief only in the case of omitted income. See Act of Jan. 12, 1971, Pub. L. 91-679, sec. 1, 84 Stat. 2063. Amendments in 1984 extended relief in the case of erroneous deductions, though the deductions needed to be "grossly erroneous" and the deductions and/or the income omission had to have resulted in a "substantial" understatement of tax on the return. See Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801. Finding the level of relief afforded by the statute still inadequate, Congress in the 1998 amendments removed the requirement that the deductions claimed be "grossly" erroneous or that the understatement of tax be "substantial" and added provisions allowing elections to allocate liability and establishing equitable relief. See Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3201(a), 112 Stat. 734.

The pattern of legislative changes designed to make innocent spouse relief more readily available also reflected congressional dissatisfaction with the administration of the statute by the Commissioner. This dissatisfaction reached the apex in 1998, when section 6015(f) was enacted as part of RRA 1998. In a February 11, 1998, Senate Finance Committee hearing on "Innocent Spouse Tax Rules" presaging that legislation, Chairman William V. Roth, Jr., diagnosed the problem with the "innocent spouse" rules

as due in significant part to unsatisfactory administration by the IRS.

> [T]he agency [IRS] is all too often electing to go after those who would be considered innocent spouses because they are easier to locate, as well as less inclined and able to fight.
>
> Part of these problems reside with the IRS, part of them are the fault of Congress. Though the agency officially acknowledges the status of innocent spouses under current law and has the ability to clear such an individual from his or her tax liability, it rarely does. [IRS Restructuring (Innocent Spouse Tax Rules): Hearings Before the S. Comm. on Finance, 105th Cong., 2d Sess. 142 (1998) (S. Hrg. 105-529, Fourth Hearing); emphasis added.]

At a February 24, 1998, hearing[7] before the Subcommittee on Oversight of the Committee on Ways and Means concerning a Treasury Department Report on Innocent Spouse Relief,[8] Chairman Johnson stated:

> As the Congress develops legislation to restructure and reform the Internal Revenue Service, we have learned of a number of disturbing cases in which taxpayers have been grossly mistreated by the IRS. Out of all the horror stories that have surfaced in recent months, none have been more heartbreaking than those involving innocent spouses--taxpayers who in many cases have been left to rear children as single parents, often without child support, only to find that their former spouses have saddled them with a crushing debt. Many of these horror stories have been going on for years without the IRS helping the spouses who are seeking relief from mounting tax liabilities, interest, and penalties. [U.S. Treasury Department Report on Innocent Spouse

---

[7]The Oversight Subcommittee hearing was held after the House had passed its version of RRA 1998 (H.R. 2676, 105th Cong., 1st Sess. (1997)) on Nov. 5, 1997. However, neither the Senate nor the conference version of H.R. 2676 had been considered or passed, and the essential form of sec. 6015(f) as finally enacted did not emerge until the conference version of the legislation.

[8]The report had been mandated by Congress in 1996 legislation. See TBOR 2 sec. 401, 110 Stat. 1459.

Relief:  Hearing Before the Subcommittee on Oversight
of the House Comm. on Ways and Means, 105th Cong., 2d
Sess. 5 (1998).]

Testifying on behalf of the Treasury Department at the hearing,

Assistant Secretary for Tax Policy Donald C. Lubick conceded a

problem in the Internal Revenue Service's administration of the

statute:

> Mr. Lubick.  I think you've put your finger on
> what I think is the most disturbing part of this whole
> problem [inadequacy of current arrangements for
> innocent spouse relief], which is that--and I think
> it's produced the most dramatic of the examples; that
> there have been some particular agents who are hard-
> nosed and unsympathetic * * *.  [Id. at 28.]

One of the solutions proposed in the Treasury Department report,

as described in Assistant Secretary Lubick's testimony, was to

"significantly expand taxpayers' procedural opportunities to

claim substantive relief under the innocent spouse provisions, by

making access to Tax Court routinely available".  Id. at 19.

Chairman Johnson endorsed the expansion of Tax Court jurisdiction

as an important part of the solution to the unsatisfactory

results that had been experienced under the statute.

> I am particularly pleased to note that the
> innocent spouse legislative recommendations discussed
> in the [Treasury and General Accounting Office] reports
> are included in our House-passed * * * legislation * *
> *.  To summarize, the bill expands the availability of
> innocent spouse relief by, No. 1, eliminating the
> various dollar thresholds; No. 2, broadening the
> definition of eligible tax understatements, and three,
> providing partial innocent spouse relief in certain
> situations, and No. 4, providing tax court jurisdiction
> over denials of innocent spouse relief.  [Id. at 7;
> emphasis added.]

Given the evidence of congressional dissatisfaction with the

IRS's track record in administering the "innocent spouse" rules

and of the congressional perception that one solution to the problem was expanded Tax Court jurisdiction, it appears unlikely that Congress intended that a significant portion of the Court's review of the IRS's disposition of innocent spouse claims be circumscribed under the deferential standard inherent in review for abuse of discretion. To conclude otherwise is to turn a tin ear to the strong critique of the Commissioner's record in administering "innocent spouse" relief evidenced in congressional hearings on the subject.

Third, another specific feature of section 6015 countervails the claim that abuse of discretion review was intended for section 6015(f) claims; namely, the provision in section 6015(e)(4) for intervention in a Tax Court proceeding by the spouse not seeking relief. As originally enacted, section 6015(e)(4) provided as follows:

> (4) Notice to other spouse.--The Tax Court shall establish rules which provide the individual filing a joint return but not making the election under subsection (b) or (c) with adequate notice and an opportunity to become a party to a proceeding under either such subsection. [RRA 1998 sec. 3201(a).]

Congress therefore contemplated that in Tax Court proceedings for review of section 6015 claims--or, more specifically, claims under subsection (b) or (c)--there would be interventions by nonrequesting spouses resulting in new evidence or argument in the Tax Court proceeding that was not available to the Commissioner as part of the administrative determination.

The 2006 amendments by the Tax Relief and Health Care Act of 2006, div. C, sec. 408, 120 Stat. 3061, to clarify the Tax Court's jurisdiction over section 6015(f) cases did not merely modify section 6015(e)(1)(A), as discussed in the majority and dissenting opinions. The 2006 amendments also modified section 6015(e)(4) to read as follows:

> (4) Notice to other spouse.--The Tax Court shall establish rules which provide the individual filing a joint return but not making the election under subsection (b) or (c) or the request for equitable relief under subsection (f) with adequate notice and an opportunity to become a party to a proceeding under either such subsection. [Emphasis added.]

Thus, in connection with clarifying the Tax Court's jurisdiction over section 6015(f) cases not involving a deficiency, Congress simultaneously added spousal intervention rights for such cases as part of the 2006 amendments.[9] The conclusion is inescapable that Congress considered intervention rights to be an important component of this Court's review of section 6015 cases, including those under section 6015(f). Intervention rights entail the distinct likelihood that new evidence will surface in the Tax

---

[9]Because of the more expansive retooling of sec. 6015(f) review procedures effected by the 2006 amendments of sec. 6015(e)(4), I agree with the majority's conclusion that the 2006 amendments are cause for the Court to reconsider the standard of review in sec. 6015(f) cases.

The Court of Appeals for the 11th Circuit recently upheld this Court's position in Ewing v. Commissioner, 122 T.C. 32 (2004), vacated on other grounds 439 F.3d 1009 (9th Cir. 2006), and Porter v. Commissioner, 130 T.C. 115 (2008), that the scope of review in a sec. 6015(f) review proceeding should not be limited to the administrative record. Commissioner v. Neal, 557 F.3d 1262 (11th Cir. 2009), affg. T.C. Memo. 2005-201. The standard of review was not in issue in Neal, as the parties had agreed that the standard was abuse of discretion.

Court proceeding. Yet to review the Commissioner's administrative determination for abuse of discretion on the basis of evidence not available to him would be, at best, anomalous. The Supreme Court has instructed that, in applying an abuse of discretion standard of review, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973). By expressly providing for intervenors in section 6015(f) review cases in the Tax Court, Congress contemplated a "new record made initially in the reviewing court" in those cases. Application of an abuse of discretion standard of review is not appropriate in such circumstances.

In addition to the intervenor issue, we must bear in mind problems with the administrative record, our inability to remand, and the fact that a stand-alone nondeficiency petition can bring a section 6015(f) case before us even where there has been no administrative decision.[10]

This case is appealable, absent stipulation to the contrary, to the Court of Appeals for the Fourth Circuit. Under the rule laid down in Golsen v. Commissioner, 54 T.C. 742, 757 (1970),

---

[10]In fact, we have recently applied a de novo standard of review in a sec. 6015(f) case. See Wiener v. Commissioner, T.C. Memo. 2008-230 ("Because we cannot ascertain what analysis was made by the Appeals officer in reaching his or her determination that petitioner is not entitled to relief under section 6015(f), we cannot review the determination for abuse of discretion. [Fn. ref. omitted.] Instead, we shall examine the trial record de novo to decide whether respondent properly concluded that petitioner is not entitled to relief.").

affd. 445 F.2d 985 (10th Cir. 1971), we abide by that court's precedent. The Court of Appeals for the Fourth Circuit disapproves of the odd pairing of a de novo scope of review with an abuse of discretion standard of review. See Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 125 (4th Cir. 1994) ("Thus, although it may be appropriate for a court conducting a de novo review of a plan administrator's action to consider evidence that was not taken into account by the administrator, the contrary approach should be followed when conducting a review under either an arbitrary and capricious standard or under the abuse of discretion standard.").[11] That is reason enough to reject that mismatched standard and scope of review in this case.

Given the statute's failure to specifically address the standard of review, Congress's expressed dissatisfaction with the Commissioner's history of administering the "innocent spouse" rules, and the anomalous results of the employment of an abuse of discretion standard of review in section 6015(f) cases, I believe the better interpretation of section 6015 is that it provides for

---

[11]In the sec. 6015(f) context, we have recognized the conceptual difficulty of conducting a trial de novo while at the same time deferring to an administrative determination. See Nihiser v. Commissioner, T.C. Memo. 2008-135 ("Although rarely employed by district courts in reviewing administrative agency action, a trial de novo typically consists of independent fact-finding and legal analysis unmarked by deference to the original factfinder."); see also Black's Law Dictionary 1544 (8th ed. 2004) (defining "trial de novo" as "A new trial on the entire case * * * conducted as if there had been no trial in the first instance.").

a de novo standard of review in all section 6015 cases, whether under subsection (b), (c), or (f).

COLVIN, MARVEL, GOEKE, WHERRY, KROUPA, and PARIS, <u>JJ</u>., agree with this concurring opinion.

HALPERN and HOLMES, <u>JJ</u>., concurring in part and dissenting in part.

## I. <u>Concurrence</u>

We concur in so much of the majority opinion as holds the appropriate standard of review to be de novo.  We do so notwithstanding our dissent in the Court's prior report in this case, <u>Porter v. Commissioner</u>, 130 T.C. 115, 146-147 (2008), holding that the appropriate <u>scope</u> of review is de novo.  That holding is now binding on us, and for that reason alone we concur that "it would be incongruous to hold that review is limited to determining whether an appeals officer 'abused his discretion,' but also to conclude that the appeals officer committed such an 'abuse' by failing to weigh information that was never even presented to him."  <u>Robinette v. Commissioner</u>, 439 F.3d 455, 460 (8th Cir. 2006) (addressing the scope and standard of review appropriate to judicial review of an Appeals officer's decision under section 6330), revg. 123 T.C. 85 (2004).

## II. <u>Dissent</u>

We dissent from the majority's conclusion that petitioner is entitled to equitable relief.  In particular we fail to see how the majority can conclude that petitioner would suffer economic hardship if relief were not granted.  First, the majority states that economic hardship is present if payment of the tax would prevent the taxpayer from paying her reasonable basic living expenses.  Majority op. p. 14.  Second, the majority holds that the hardship determination (and certain other determinations) are

made with respect to the taxpayer's status "at the time of trial." Majority op. p. 14, note 7. Third, the majority fails to find (and the record contains no evidence of) petitioner's reasonable basic living expenses. Fourth, and most importantly, at the time of trial, petitioner was in bankruptcy, and she was not discharged until almost 7 weeks after the trial concluded, when we assume her solvency and the hardship (if any) resulting from her joint liability to pay $1,070 would be determinable. We fail to see how the majority could determine that payment of that liability would work a hardship before it knew the disposition of her petition in bankruptcy (of which, like her reasonable basic living expenses, the record contains no evidence).

WELLS, J., dissenting: I agree with and have joined Judge Gustafson's thorough and well-reasoned dissent. I respectfully write separately to address an issue that Judge Gustafson does not address in his dissent but is raised by concurring Judges and to point to additional reasons for not abandoning the abuse of discretion standard of review in section 6015(f) cases.

Judges Halpern and Holmes indicate that it would be incongruous to apply the abuse of discretion standard of review on the basis of trial evidence that the "Appeals officer" had never seen.[1] They apparently believe that the Commissioner's exercise of discretion is complete and final before trial. However, in section 6015(f) cases and in other cases where the abuse of discretion standard of review is applied after a trial de novo, I believe that the exercise of discretion that is under review is the Commissioner's position after all of the evidence is in. The final exercise of discretion by the Commissioner typically is a posttrial brief containing the Commissioner's reasons and arguments. Indeed, our experience is that the Commissioner often will grant partial or full relief after considering all of the evidence adduced at trial. When, however, the Commissioner finally argues that relief should be denied

---

[1]Unlike sec. 6330, sec. 6015 does not require a "hearing" before an "Appeals officer" or that a "determination" against the taxpayer be made before filing a petition requesting relief under sec. 6015(f). As noted by Judge Gustafson in his dissent, it is the Secretary, through his delegate the Commissioner, who is vested with the discretion under sec. 6015(f), and it is the Commissioner who appears as the respondent in every case before the Tax Court.

after all of the trial evidence is considered, it is that position (i.e., the Commissioner's exercise of discretion at that point) that we review for abuse of discretion.

Additionally, I am concerned that today the Court, on the pretext that a 2006 amendment to section 6015(e) provides an occasion to reconsider our prior rulings,[2] essentially overrules our longstanding precedent that this Court reviews the Commissioner's denial of section 6015(f) relief for abuse of discretion. That precedent originated with our Opinion in Butler v. Commissioner, 114 T.C. 276 (2000), and was subsequently reaffirmed in three Court-reviewed Opinions, the latest of which was rendered in this very case less than a year ago. Porter v. Commissioner, 130 T.C. 115 (2008) (Porter I); Ewing v. Commissioner, 122 T.C. 32 (2004), vacated 439 F.3d 1009 (9th Cir. 2006); Cheshire v. Commissioner, 115 T.C. 183 (2000), affd. 282 F.3d 326 (5th Cir. 2002).

In overruling this precedent, the majority fails to recognize the opinions of six Courts of Appeals that have affirmed our practice of holding a trial de novo in section 6015(f) relief cases and then applying the abuse of discretion standard of review. Commissioner v. Neal, 557 F.3d 1262, (11th Cir. 2009), affg. T.C. Memo. 2005-201; Capehart v. Commissioner, 204 Fed. Appx. 618 (9th Cir. 2006), affg. T.C. Memo. 2004-268; Alt v. Commissioner, 101 Fed. Appx. 34 (6th Cir. 2004), affg. 119

---

[2]As Judge Gustafson's dissent explains, the 2006 amendment had nothing to do with changing the standard of review in sec. 6015(f) cases.

T.C. 306 (2002); Doyle v. Commissioner, 94 Fed. Appx. 949 (3d Cir. 2004), affg. T.C. Memo. 2003-96; Mitchell v. Commissioner, 292 F.3d 800 (D.C. Cir. 2002), affg. T.C. Memo. 2000-332; Cheshire v. Commissioner, 282 F.3d 326 (5th Cir. 2002).  The most recent of these opinions was issued on February 11, 2009, and affirmed what it described as:

> the Tax Court's longstanding rule and practice * * * to hold trials de novo in situations where it makes determination and redeterminations, including § 6015(f) cases.  To prevail in the trial de novo, the taxpayer petitioner must show that the Commissioner's denial of equitable relief was an abuse of discretion. [Commissioner v. Neal, supra at 1268; citations omitted.]

These Courts of Appeals do not appear to have any disagreement with the abuse of discretion standard of review in a trial where evidence is taken de novo.

I also would like to address Judge Gale's argument in his concurring opinion that the Court of Appeals for the Fourth Circuit would reject a "mismatched standard and scope of review" in section 6015(f) cases, pursuant to its opinion in Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120 (4th Cir. 1994), and that we are bound to follow that outcome under the rule of Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).  I believe that Sheppard is not squarely in point and is distinguishable.

As noted by Judge Gale, Sheppard holds that where an abuse of discretion standard of review is applicable to a plan

administrator's action under ERISA,[3] the scope of review is limited to the evidence that was taken into account by the plan administrator at the time it acted. Id. at 25. The Court of Appeals did not hold that it disapproves of any pairing of a de novo scope of review with an abuse of discretion standard of review (a holding that would run headlong into Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532 (1979)), and it made no holding whatsoever about section 6015(f) cases under the Internal Revenue Code. Moreover, under section 6015(f) we are reviewing, pursuant to the statute, the exercise of discretion of a Government agency's administrator who, as mentioned above, appears as the respondent in every case before us, as opposed to a District Court in an ERISA case reviewing a private entity's exercise of discretion conferred in a plan document.[4] Consequently, I believe that the Golsen rule has no bearing on the case before us.

Our review of section 6015(f) cases differs from a District Court's review of a plan administrator's exercise of discretion in another material respect. Under our precedent in Friday v.

---

[3]ERISA is the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, 88 Stat. 829, codified as amended not in the Internal Revenue Code (26 U.S.C.) but in 29 U.S.C. secs. 1001-1461 (2006).

[4]Under the Supreme Court's holding in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), quoted in Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 123 (4th Cir. 1994), the plan administrator's action is reviewed under a de novo standard of review unless the plan document vests the administrator with discretion, in which case, the action is reviewed under an abuse of discretion standard.

<u>Commissioner</u>, 124 T.C. 220, 222 (2005), we have no authority to remand section 6015(f) cases to the Commissioner, whereas in a case arising under ERISA like <u>Sheppard</u>, a district court has the authority to remand the case to the plan administrator. <u>Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.</u>, <u>supra</u> at 125. In response to the criticism that a limited record can hide an abuse of discretion that results from a plan administrator's failure to consider or admit into the record all of the relevant facts, the Court of Appeals specifies remand as the "proper course" to bring in additional evidence when the record is otherwise lacking: "'If the court [believes] the administrator lacked adequate evidence, the proper course [is] to remand to the trustees for a new determination . . . not to bring additional evidence before the district court.'" <u>Id.</u> at 125 (quoting <u>Berry v. Ciba-Geigy Corp.</u>, 761 F.2d 1003, 1007 (4th Cir. 1985)).

In a section 6015(f) case, however, if this Court finds the factual underpinnings of the Commissioner's determination to be lacking, we have no authority, pursuant to <u>Friday</u>, to remand the case to the Commissioner to bring in additional evidence to allow us to review a sufficient record to test the Commissioner's exercise of discretion which, as mentioned above, continues throughout the case until all of the evidence is in. Accordingly, in a section 6015(f) case, a de novo scope of review, as we held in Porter I, is the <u>only</u> means by which we can supplement an insufficient record.

Finally, I would like to address the venerable principle of stare decisis. For the reasons cited by Judge Gustafson in his dissent and others discussed here, I think that the correct standard to use in reviewing section 6015(f) cases in this Court is abuse of discretion. Consequently, I do not think it is necessary to rely on stare decisis alone as the reason for continuing to review section 6015(f) cases for abuse of discretion. Nonetheless, stare decisis is additional support for not abandoning the abuse of discretion standard. The majority makes no mention of and gives no consideration to that principle or why it should not apply.

Stare decisis should apply in the instant case for reasons stated in the recent opinion of the Supreme Court in John R. Sand & Gravel Co. v. United States, 552 U.S. ___, ___, 128 S. Ct. 750, 756-757 (2008)(citations and quotation marks omitted):

> stare decisis in respect to statutory interpretation has special force, for Congress remains free to alter what we have done. * * *
>
> * * * Justice Brandeis once observed that in most matters it is more important that the applicable rule of law be settled than that it be settled right. To overturn a decision settling one such matter simply because we might believe that decision is no longer right would inevitably reflect a willingness to reconsider others. And that willingness could itself threaten to substitute disruption, confusion, and uncertainty for necessary legal stability. * * *

In sum, the use of an abuse of discretion standard of review in a de novo trial is consistent with this Court's precedent, the

opinions of the Courts of Appeals I have cited above, the Supreme Court's holding in <u>Thor Power</u>, and <u>stare</u> <u>decisis</u>.

For the foregoing reasons, I dissent.

COHEN, THORNTON, and GUSTAFSON, <u>JJ</u>., agree with this dissenting opinion.

GUSTAFSON, J., dissenting:  I respectfully dissent from the majority opinion, which abandons the abuse-of-discretion standard for the Court's review of the IRS's denial of relief under section 6015(f) and adopts in its place a "de novo" standard of review.  In so doing, the majority departs from the better reading of the statute and from very substantial precedent.

I.   By Conferring Discretion on the Secretary, Section 6015(f) Calls for the Court To Review the Secretary's Actions for Abuse of That Discretion.

A.    Section 6015(f) Confers Discretion On the Secretary.

Section 6015(f) provides that "the Secretary may relieve such individual of such liability".  (Emphasis added.)  Four features of section 6015 show that this language confers discretion on the Secretary:  First, "The word 'may' customarily connotes discretion".[1]  Jama v. Immigration & Customs Enforcement, 543 U.S. 335, 346 (2005).  Second, section 6015(f), rather than simply providing a rule, expressly names an official ("the Secretary") to apply its rule.  Most provisions in the Internal Revenue Code simply state a rule and do not repeat in each instance the truism[2] that it will be the Commissioner who

---

[1]The majority so acknowledges.  Majority op. p. 8 ("Section 6015(f) provides that the Commissioner 'may' grant relief under certain circumstances, suggesting a grant of relief is discretionary").  See also Kirkendall v. Dept. of the Army, 479 F.3d 830, 870 (Fed. Cir. 2007); Lantz v. Commissioner, 132 T.C. ____, ___ (2009) (slip op. at 26) ("section 6015(f), uses the discretionary term 'may'").

[2]See sec. 7801(a)(1) ("the administration and enforcement of this title shall be performed by or under the supervision of the Secretary of the Treasury"); sec. 7803(a)(2) ("The Commissioner shall have such duties and powers as the Secretary may prescribe,
(continued...)

applies that rule on behalf of the Government.  It is therefore a
departure from the norm when a statutory provision <u>does</u> name an
official to apply the rule--e.g., by stating that "the Secretary
may" impose a given treatment,[3] or that "[t]he Secretary may
waive" a certain provision,[4] or that a given treatment shall
obtain when it is appropriate "in the opinion of the Secretary",[5]
or that a determination of an issue will be made by some
specified subordinate of the Secretary.[6]  When a statute thus
explicitly names the agency decision-maker, this is a further
indication[7] that the matter is committed to his or her

---

(...continued)
including the power to * * * administer, manage, conduct, direct,
and supervise the execution and application of the internal
revenue laws").

[3]See sec. 482; <u>Dolese v. Commissioner</u>, 82 T.C. 830, 838
(1984), affd. 811 F.2d 543, 546 (10th Cir. 1987).

[4]See former sec. 6659(e); <u>Krause v. Commissioner</u>, 99 T.C.
132, 179 (1992), affd. sub nom. <u>Hildebrand v. Commissioner</u>,
28 F.3d 1024 (10th Cir. 1994).

[5]See secs. 446(b), 471(a); <u>Thor Power Tool Co. v.
Commissioner</u>, 439 U.S. 522, 532 (1979); see also <u>Hernandez-
Cordero v. U.S. INS</u>, 819 F.2d 558, 566 & nn.18-24, 570 (5th Cir.
1987) (Rubin, J., dissenting) (appendix listing 169 sections in
the United States Code "placing discretion in the opinion of the
President, the Attorney General, or a Cabinet Secretary" with the
language "in the opinion of").

[6]See sec. 6330(c)(3); <u>Goza v. Commissioner</u>, 114 T.C. 176,
181-182 (2000).

[7]Admittedly, the naming of the official who makes that
decision is not, by itself, an infallible marker that discretion
has been granted to that official.  Rather, for example,
section 269(a) provides that "the Secretary may disallow" losses
acquired in tax-motivated transactions, but the case law under
section 269 does not indicate a special grant of discretion.  Cf.
<u>United States v. Jefferson Elec. Manufacturing Co.</u>, 291 U.S. 386,
                                                    (continued...)

discretion.  This ought to be considered a particularly strong indication where, as with section 6015(f), that feature of the statute contrasts with its neighboring provisions, i.e., subsections (b) and (c).[8]  If we level these distinctions and find that all the forms of relief under section 6015 have the same standard of review, notwithstanding their different vocabulary, then we ignore the Congress's use of distinctive language in the various subsections.

Third, section 6015(e) contrasts the discretionary character of section 6015(f) (under which one is said to "request" relief) with the nondiscretionary character of subsections (b) and (c) (under which one is said to "elect" relief).[9]  A benefit that may

---

(...continued)
397-398 (1934) (the phrase "to the satisfaction of the Secretary" does not "invest the Commissioner with <u>absolute</u> authority or discretion" (emphasis added) but "means that the additional element is not lightly to be inferred but to be established by proof which convinces in the sense of inducing belief"); <u>R.E. Dietz Corp. v. United States</u>, 66 AFTR 2d 5772, 5779, 90-2 USTC par. 50,447, at 85,439 (N.D.N.Y. 1990) (the phrase "'to the satisfaction of the Secretary' * * * may very well indicate that the instant action should have been stylized and litigated as one * * * challenging that determination as arbitrary or capricious or as an abuse of discretion"), affd. 939 F.2d 1 (2d Cir. 1991).

[8]Section 6015(b)(1) provides that "the other individual <u>shall be relieved</u> of liability"; section 6015(b)(2) provides that "such individual <u>shall be relieved</u> of liability"; and section 6015(c) provides that "the individual's <u>liability * * * shall not exceed</u>" his or her allocable portion; but section 6015(f) departs from the pattern to provide that "<u>the Secretary may</u> relieve". (Emphasis added.)  As is discussed <u>infra</u> part IV.D, we recognize the difference of these forms of relief in our opinion in <u>Lantz v. Commissioner</u>, <u>supra</u> at ___ (slip op. at 23).

[9]To the existing provision of section 6015(e)(1) granting jurisdiction to the Tax Court "[i]n the case of an individual * * * who <u>elects</u> to have subsection (b) or (c) apply", the 2006
(continued...)

be "elected" is one's right; but a benefit that must be "requested" invokes the discretion of one who may or may not grant the benefit.[10]

Fourth, the pertinent language in section 6015(f) is identical to discretionary language in a companion provision, section 66(c) (which grants analogous relief for liability from tax on community income). The same 1998 amendment that created section 6015(f) also added an "equitable relief" provision as the last sentence of section 66(c) (emphasis added):

_____

(...continued)
amendment (discussed in greater detail below) added "or in the case of an individual who requests equitable relief under subsection (f)". (Emphasis added.) In addition, where existing language in subsection (e)(1)(A)(i)(II) and (B)(i) referred to "elect[ing]" relief under subsections (b) and (c), equivalent amendments were made to add reference to "request[ing]" relief under subsection (f). The majority ignores the difference between "electing" and "requesting" when they state, "Nothing in amended section 6015(e) suggests that Congress intended us to review for abuse of discretion." Majority op. p. 10.

[10]To "request" is "to ask * * * to do something" or "to ask * * * for something", whereas to "elect" is "to make a selection of" or "to choose". Webster's Third New International Dictionary (1986). This Court has similarly "defined the legal term 'election'" as the "choice of one of two rights or things". Boardwalk Natl. Bank v. Commissioner, 34 T.C. 937, 945 (1960) (quoting Weis v. Commissioner, 30 B.T.A. 478, 488 (1934) ("The term 'election' in its legal sense means the choice of one of two rights or things, to each of which the party choosing has an equal right, but both of which he can not have, * * * as when a man is left to his own free will to take or do one thing or another, which he pleases, * * * a choice between different things, * * * the act of electing or choosing'")); see also Snow v. Alley, 30 N.E. 691, 692 (Mass. 1892) ("Election exists when a party has two alternative and inconsistent rights, and it is determined by a manifestation of a choice"); Black's Law Dictionary 557 (8th ed. 2004) (describing an "election" as "The exercise of choice; esp., the act of choosing from several possible rights or remedies").

> *Under procedures prescribed by the Secretary, if, taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)* attributable to any item for which *relief is not available* under the preceding sentence, *the Secretary may relieve such individual of such liability.*

The language emphasized above is identical to language added by the same amendment to section 6015(f).[11] When reviewing IRS action under this provision in section 66(c), we have reviewed for abuse of discretion. See Bernal v. Commissioner, 120 T.C. 102, 107 (2003); Morris v. Commissioner, T.C. Memo. 2002-17; Beck v. Commissioner, T.C. Memo. 2001-198. If this language in section 66(c) granted discretion to the IRS, then the identical language in section 6015(f), enacted at the same time, must have done the same.

B. When a Statute Confers Discretion on an Agency, a Court Reviewing Agency Action Must Defer to That Discretion and Review It Only for Abuse.

The majority acknowledges that section 6015(f) confers discretion on the Secretary,[12] but it then denies that we review

---

[11]See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(a), (b), 112 Stat. 734, 739. We observe in Lantz v. Commissioner, 132 T.C. at ____ (slip op. at 19-23), that section 6015(f) and the final sentence of section 66(c) are "companion statute[s]".

[12]See majority op. p. 11 (under section 6015(f), "the decision whether to grant relief * * * was committed largely to agency discretion"); majority op. p. 8 (the word "may" in section 6015(f) "suggest[s that] a grant of relief is discretionary"). If those statements by the majority are equivocal (qualified as they are by "largely" and "suggest[s]"), then this Court has removed all doubt by lately holding that "a commonsense reading of section 6015 is that the Secretary has discretion to grant relief under section 6015(f)". Lantz v. Commissioner, supra at ___ (slip op. at 28).

the IRS's action for abuse of that discretion, insisting rather that we review "de novo", without enhanced deference to the agency's decision-making.  This conception denudes that "discretion" of any effect and contradicts the essence of discretion being granted to an agency.  If a Code provision that grants no discretion yields de novo review of an agency's determination, and a Code provision that <u>does</u> grant discretion yields the same de novo review, then the discretion is illusory. The majority's approach effectively relegates the agency's discretion to being relevant only to the agency that exercises it and overlooks that discretion when the agency's action is being reviewed.

Contrary to that approach, it is when agency action is being judicially reviewed that a grant of discretion has its significance.  Of course, this Court can properly employ an abuse-of-discretion standard to review IRS action only where the Code has conferred discretion on the IRS.  By the same token, where discretion has in fact been conferred, the only proper review is for abuse of that discretion.[13]  The majority pays lip service to the grant of discretion in section 6015(f) but then overlooks that discretion with its de novo review.

---

[13]See <u>Estate of Roski v. Commissioner</u>, 128 T.C. 113, 128 (2007) (noting the Commissioner's concession that "'a discretionary act * * * could only be subject to an abuse of discretion review'").

II.  Abandoning the Abuse-of-Discretion Standard Contradicts Uniform Precedent.

The majority acknowledges, majority op. p. 7, that "[w]e have generally reviewed the Commissioner's denial of relief under section 6015(f) for abuse of discretion", majority op. p. 7-8, and it appropriately cites Butler v. Commissioner, 114 T.C. 276 (2000), in which we held that this Court had jurisdiction over section 6015(f) and that the standard of review in a section 6015(f) case is for abuse of discretion.  Butler so held (as the majority states, majority op. p. 8) "because of the discretionary language in section 6015(f)" (i.e., "the Secretary may relieve" (emphasis added)).

The abuse-of-discretion standard for reviewing denial of relief under section 6015(f) was employed again in Cheshire v. Commissioner, 115 T.C. 183, 197-198 (2000), affd. 282 F.3d 326 (5th Cir. 2002), which the Court of Appeals for the Fifth Circuit affirmed, stating:

> Section 6015(f) confers power upon the Secretary and his delegate, the Commissioner, to grant equitable relief where a taxpayer is not entitled to relief under § 6015(b) or (c), but "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)."  In this case, Appellant argues that the Commissioner improperly denied her equitable relief with respect to the retirement distributions and the interest income.  This court reviews the Commissioner's decision to deny equitable relief for abuse of discretion. [282 F.3d at 338; emphasis added; fn. refs. omitted.]

Similarly, in Mitchell v. Commissioner, T.C. Memo. 2000-332, affd. 292 F.3d 800 (D.C. Cir. 2002), we held, and the Court of

Appeals for the D.C. Circuit affirmed, that the Commissioner had not abused discretion in denying section 6015(f) relief.  In affirming the use of the abuse-of-discretion standard, the Court of Appeals relied on the language of section 6015(f) and stated:

> As the decision whether to grant this equitable relief <u>is committed by its terms to the discretion of the Secretary</u>, the Tax Court and this Court review such a decision for abuse of discretion.  <u>See Flores v. United States</u>, 51 Fed. Cl. 49, 51 & n. 1 (2001); <u>Butler</u>, 114 T.C. at 291-92.  We conclude that there was no such abuse, for the reasons given by the Tax Court in its decision * * *. [292 F.3d at 807; emphasis added.]

In <u>Mitchell</u> the Court of Appeals thus cites, inter alia, <u>Flores v. United States</u>, 51 Fed. Cl. 49, 51 & n.1 (2001), in which the Court of Federal Claims stated that it "has jurisdiction to review whether the Commissioner has abused his discretion under section 6015(f)".  Again, in <u>Neal v. Commissioner</u>, 557 F.3d 1262, 1263 (11th Cir. 2009), affg. T.C. Memo. 2005-201, where "[b]oth parties agree[d] that the Tax Court appropriately used an abuse of discretion standard of review", the Court of Appeals for the Eleventh Circuit affirmed our holding that section 6015(f) calls for an abuse-of-discretion standard of review and a de novo scope of review.  In unpublished opinions, the Courts of Appeals for the Third, Sixth, and Ninth Circuits have also affirmed the Tax Court's use of the abuse-of-discretion standard for reviewing section 6015(f) cases.  See <u>Capehart v. Commissioner</u>, 204 Fed. Appx. 618 (9th Cir. 2006) (citing <u>Mitchell v. Commissioner</u>, 292 F.3d 800 (9th Cir. 2006), affg. T.C. Memo. 2000-332), affg. T.C. Memo. 2004-268; <u>Doyle v. Commissioner</u>, 94 Fed. Appx. 949 (3d Cir.

2004) (citing <u>Mitchell</u>), affg. T.C. Memo. 2003-96; <u>Alt v. Commissioner</u>, 101 Fed. Appx. 34 (6th Cir. 2004), affg. 119 T.C. 306 (2002).

This Court's above-cited opinions in <u>Butler</u>, <u>Cheshire</u>, <u>Mitchell</u>, and <u>Neal</u> were decided before the 2006 amendments to which the majority attaches importance and which are discussed below; but for the current point it is sufficient to observe that even after that amendment, this Court has consistently used the abuse of discretion standard.[14]  See <u>Stolkin v. Commissioner</u>, T.C. Memo. 2008-211; <u>Alioto v. Commissioner</u>, T.C. Memo. 2008-185; <u>Nihiser v. Commissioner</u>, T.C. Memo. 2008-135; <u>Dunne v. Commissioner</u>, T.C. Memo. 2008-63; <u>Gonce v. Commissioner</u>, T.C. Memo. 2007-328; <u>Dowell v. Commissioner</u>, T.C. Memo. 2007-326; <u>Golden v. Commissioner</u>, T.C. Memo. 2007-299, affd. 548 F.3d 487 (6th Cir. 2008); <u>Billings v. Commissioner</u>, T.C. Memo. 2007-234; <u>Beatty v. Commissioner</u>, T.C. Memo. 2007-167; <u>Butner v. Commissioner</u>, T.C. Memo. 2007-136; <u>Banderas v. Commissioner</u>, T.C. Memo. 2007-129; <u>Ware v. Commissioner</u>, T.C. Memo. 2007-112; <u>Farmer v. Commissioner</u>, T.C. Memo. 2007-74; <u>Van Arsdalen v. Commissioner</u>, T.C. Memo. 2007-48.

_____

[14]Cf. <u>Wiener v. Commissioner</u>, T.C. Memo. 2008-230 ("Because we cannot ascertain what analysis was made by the Appeals officer in reaching his or her determination that petitioner is not entitled to relief under section 6015(f), we cannot review the determination for abuse of discretion.  Instead, we shall examine the trial record de novo to decide whether respondent properly concluded that petitioner is not entitled to relief" (fn. ref. omitted)).

Thus not only this Court but also the Courts of Appeals and the Court of Federal Claims have uniformly applied the abuse-of-discretion standard to review the Commissioner's exercise of the discretion granted to him by the terms of section 6015(f), and until today no court has held otherwise. Indeed, today's majority opinion is at odds with this Court's prior opinion issued less than a year ago in this very case, Porter v. Commissioner, 130 T.C. 115, 122-123 (2008) (Porter I), in which we defended the use of an abuse-of-discretion standard of review with a de novo record scope of review. The Court did state in a footnote that "we need not decide any issue relating to the standard of review", id. at 122, but the opinion concludes with these words, id. at 125:

> The measure of deference provided by the abuse of discretion standard is a proper response to the fact that section 6015(f) authorizes the Secretary to provide procedures under which, on the basis of all the facts and circumstances, the Secretary may relieve a taxpayer from joint liability. That approach (de novo review, applying an abuse of discretion standard) properly implements the statutory provisions at issue here and has a long history in numerous other areas of Tax Court jurisprudence.

In making its about-face, the majority does not state today that this Court erred in its original holding in Butler v. Commissioner, 114 T.C. 276 (2000), but says rather that in Butler "our adoption of an abuse of discretion standard was appropriate." Majority op. p. 9.[15] However, the majority has

---

[15]See Porter v. Commissioner, 130 T.C. 115, 143 (2008) (Goeke, J., concurring) ("it was logical for the Court in Butler * * * to find that the standard of review was abuse of discretion
(continued...)

undertaken a "reconsideration" that was prompted by the 2006 amendments, to which we now turn.

III. The 2006 Amendment to Section 6015(e) Does Not Implicate the Abuse-of-Discretion Standard.

    A.    The Background to the 2006 Amendment

Before 2006, requests for section 6015(f) relief could arise in the Tax Court in various procedural contexts. Three of these--i.e.,

> [1] as an affirmative defense in deficiency redetermination cases because of section 6213(a),
> [2] as a remedy on review of collection due process determinations because of section 6330(d)(1)(A), and
> [3] as relief in stand-alone petitions when the Commissioner has asserted a deficiency against a petitioner[16]

--were not implicated in the jurisdiction controversy that arose in 2006. However, a fourth procedure is the so-called "nondeficiency stand-alone petition". Where a joint tax return reports a tax liability that the joint taxpayers have not fully paid, and the IRS has not asserted a deficiency, one of the spouses might request relief from that joint liability and, if the relief is denied, might file a petition under section 6015(e)(1). Such nondeficiency stand-alone petitions became a subject of controversy because of language in the first sentence

---

(...continued)
because of the discretionary language in section 6015(f)"). As we argue below, nothing material has changed since Butler was decided in 2000; and if the abuse-of-discretion standard was "logical" and "appropriate" then, it remains so today.

[16]Billings v. Commissioner, 127 T.C. 7, 18 (2006) (Billings I).

of section 6015(e)(1): "In the case of an individual <u>against whom a deficiency has been asserted</u>". (Emphasis added.) This emphasized language had been added to section 6015(e)(1) in December 2000; and for any petitioner seeking section 6015(f) relief whose jurisdictional basis was section 6015(e), this 2000 amendment raised an obvious question whether the case could proceed in the absence of a deficiency's having been asserted.

As is noted above, it was in <u>Butler</u> that we held that we would use an abuse-of-discretion standard to review the IRS's denial of such relief. <u>Butler</u> itself was a deficiency suit brought pursuant to section 6213(a) by a claimant against whom a deficiency <u>had</u> been asserted, but its reasoning would apply to review of section 6015(f) relief however it arose. <u>Butler</u> was brought and decided before the 2000 amendment that provoked the particular controversy that produced the 2006 amendment on which the majority relies. In any event, cases like <u>Butler</u>--a deficiency suit under section 6213(a) brought by a petitioner who sought relief under section 6015(f) and against whom a deficiency had been asserted--were not implicated in this jurisdictional problem involving section 6015(e)(1).

On the basis of the language added to section 6015(e)(1) in 2000 ("against whom a deficiency has been asserted"), first the Ninth Circuit, in <u>Commissioner v. Ewing</u>, 439 F.2d 1109 (9th Cir. 2006), revg. 118 T.C. 494 (2002) and vacating 122 T.C. 32 (2004), and then the Eight Circuit, in <u>Bartman v. Commissioner</u>, 446 F.3d 785 (8th Cir. 2006), revg. in part T.C. Memo. 2004-93, held that

we lacked jurisdiction under section 6015(e)(1) where no deficiency had been asserted against the taxpayer.  The Tax Court accepted this analysis in Billings v. Commissioner, 127 T.C. 7 (2006) (Billings I),[17] and implied that Congress should "identif[y] this as a problem and fix[] it legislatively".

B.    The Nature of the 2006 Amendment

Congress did identify and fix the problem.  On June 15, 2006, Senators Feinstein and Kyl proposed an amendment that Senator Feinstein characterized as "only minor legislative modifications * * * [to] clarif[y] the statute's original intent" and to "provide a straightforward and uncontroversial solution to the unfair treatment of innocent spouses under current law" that resulted after "[r]ecent decisions of the Eighth and Ninth Circuit Courts of Appeals" (i.e., Ewing and Bartman).  152 Cong. Rec. S5962-5963 (daily ed. June 15, 2006).  Senator Kyl similarly explained that he sought "to clarify the jurisdiction of the U.S. Tax Court in cases involving 'equitable relief' for innocent spouse claims."  Id. at S5963.  Congress adopted their proposal

---

[17]The Tax Court observed in Billings I, 127 T.C. at 17, that this analysis did not deprive the Tax Court of jurisdiction over all section 6015(f) cases, but only over those raised in so-called "nondeficiency stand-alone petitions".  .  It observed that "innocent spouse relief under all subsections of 6015" (i.e., including section 6015(f) relief) remained available in deficiency cases under section 6213(a) and in collection due process cases under section 6330(d)(1)(A), as well as in "stand-alone petitions when the Commissioner has asserted a deficiency against a petitioner."  Id. at 18.

and amended section 6015(e)(1) to read as follows, by adding the language that is emphasized here:[18]

> SEC. 6015(e). Petition for Review by Tax Court.--
>
> (1) In general.--In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply, or in the case of an individual who requests equitable relief under subsection (f)--
>
> > (A) In general.--In addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section * * *.

(It should be noted that, apart from the language emphasized, all the language quoted above was in the statute before 2006. In particular, the pre-2006 statute gave the Tax Court jurisdiction "to determine the appropriate relief" (emphasis added), and the 2006 amendments made no change to that terminology.)

C.   The Inapplicability of the 2006 Amendment to This Case

The gist of the 2006 amendment was to add subsection (f) relief to the provision in section 6015(e) giving jurisdiction to the Tax Court. The amendment responded to court opinions holding that the Tax Court lacked jurisdiction over one category of section 6015(f) cases (nondeficiency stand-alone petitions). The express purpose of the 2006 amendment was to clarify Congress's

---

[18]The Tax Relief and Health Care Act of 2006, Pub. L. 109-432, div. C, sec. 408(a), 120 Stat. 3061. As is discussed supra p. 4 & note 9, these 2006 amendments also added, to the existing references in section 6015(e)(1)(A)(i)(II) and (B)(i) to a taxpayer's "elect[ing]" relief under subsections (b) and (c), new references to a taxpayer "request[ing]" subsection (f) relief. Id. sec. 408(b), 120 Stat. 3062.

intent that the Tax Court should have jurisdiction to review all types of section 6015(f) cases.  To do this, the 2006 amendment simply added a phrase to the existing provision of section 6015(e).  It had no effect on the other types of section 6015(f) cases.  It made no change to the discretionary language in section 6015(f).

The language and history of the 2006 amendment show that the amendment had nothing to do with the abuse-of-discretion standard.  There is no hint in the legislative history that Congress intended to modify the long line of cases that had previously applied the abuse-of-discretion standard.  Thus, after the amendment, we explained its purpose and effect in Billings v. Commissioner, T.C. Memo. 2007-234 (Billings II), and stated:  "We are mindful that our review of that decision [to deny section 6015(f) relief] is for abuse of discretion.  See Butler v. Commissioner, 114 T.C. 276, 287-92 (2000)."  The 2006 amendment was simply a straightforward clarification of our jurisdiction.

In fact, the majority does not actually argue that the 2006 amendment made any change that drives their conclusion.  Rather, the majority simply states that a "reconsideration" of our standard of review is "warranted" because of "Congress's confirmation of our jurisdiction" in the 2006 amendments.  Majority op. p. 8.  The 2006 amendments thus appear to be not a justification but an occasion for the majority's decision, and the specific arguments in support of that decision do not

actually turn on any statutory language that was changed in 2006. We now turn to those specific arguments.

IV.  Abandonment of the Abuse-of-Discretion Standard of Review for Section 6015(f) Cases Is Not Warranted by Any Feature of the Statute.

   A.   The Word "Determine" in Section 6015(e)

The majority opinion places great importance on the fact that amended section 6015(e) provides the Tax Court with jurisdiction "to determine the appropriate relief available to the individual under this section" (emphasis added)--language that existed before the 2006 amendment and that had been considered in Butler and all the cases after it that applied the abuse-of-discretion standard.  The majority now asserts:

> The use of the word "determine" suggests that Congress intended us to use a de novo standard of review as well as scope of review.  In other instances where the word "determine" or "redetermine" is used, as in sections 6213 and 6512(b), we apply a de novo scope of review and standard of review.  See Porter v. Commissioner, 130 T.C. at 118-119.  [Majority op. p. 10.]

The cited passage in Porter I does discuss the significance of the word "determine"--albeit for its implications on the scope of review.  However, when Porter I came to address the standard of review, it correctly argued at some length, see 130 T.C. at 122-123, for the compatibility of a de novo trial and a review for abuse of discretion.  And it could hardly have done otherwise. Anyone who would argue that an abuse-of-discretion standard of review cannot be employed after a de novo trial will promptly confront the Supreme Court's contrary holding in Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 533 (1979) (cited, of course,

in Porter I), which approved precisely that regime.  See also
Ewing v. Commissioner, 122 T.C. at 40-41.

In fact, the word "determine" cannot have the significance
that the majority infers for the issue of standard of review.
The preeminent appearance of a form of the term "determine" is in
our principal jurisdictional statute, which authorizes us to give
a "redetermination of the deficiency."  Sec. 6213(a).  In a
deficiency suit, however, the standard of review may vary.  See
Rule 142.  It may be that in most deficiency cases we do both
conduct the trial de novo and decide the case "de novo", imposing
on the taxpayer only a normal burden of proof by the
preponderance of the evidence and entertaining only a normal
presumption that the Commissioner's determination was correct.
However, in some deficiency cases, we do review the
Commissioner's determination for an abuse of discretion.  See,
e.g., Thor Power Tool Co. v. Commissioner, supra.  On the other
hand, in some deficiency cases, the burden of proof is on the
Commissioner, who must, for example, prove fraud by "clear and
convincing evidence."  Rule 142(b).  In our "redetermination" of
a deficiency, we apply the burden of proof and the standard of
review called for by the law applicable to the given case.

That the word "determine" does not at all preclude abuse-of-
discretion review is made explicit in a statute on which, for a
different point, the majority opinion expressly relies:
Section 6404(h) explicitly provides, "The Tax Court shall have
jurisdiction * * * to determine whether the Secretary's failure

to abate interest under this section was an <u>abuse of discretion</u>". (Emphasis added.)  As it is used in the Internal Revenue Code, the word "determine" does not imply that an abuse-of-discretion standard of review should be abandoned in favor of "de novo" review.

B.    <u>The Comparison to Section 6404</u>

The point that the majority derives from section 6404(h) is that, when Congress wants to impose an abuse-of-discretion standard, it knows how to do so.  The majority observes, majority op. pp. 10-11, that when Congress granted jurisdiction for review of the IRS's denial of interest abatement (suggested by the majority as analogous to Congress's confirming jurisdiction in section 6015(e)(1)),[19] it made explicit that we are to determine whether there "was an abuse of discretion".  Sec. 6404(h)(1). Clearly, section 6404(h)(1) is the high-water mark of congressional clarity on this issue of standard of review. However, there is a substantial body of case law calling for abuse-of-discretion review in instances where the statute does

---

[19]In this regard, section 6404 is not, in fact, a particularly close analogue to section 6015(e) but is different in two significant respects:  First, the 1996 amendment of section 6404 gave the Tax Court jurisdiction where before it had none; but the 2006 amendment of section 6015(e) clarified the Tax Court's jurisdiction as to only one form of section 6015(f) relief, leaving unaffected the Court's preexisting jurisdiction as to other forms.  Second, the 1996 amendment of section 6404 created a new review regime; but the 2006 amendment of section 6015(e) presupposed the existence of a body of case law that had consistently recognized an abuse-of-discretion standard of review.

not include the phrase "abuse of discretion".[20]  Manifestly, when Congress wants to impose an abuse-of-discretion standard, it has more than one way to do so.  One way it may do so is to refer (as in section 6404(h)(1)) to "abuse of discretion"; but another is to provide (as in section 6015(f)) that "the Secretary may relieve such individual of such liability."  (Emphasis added.)

C.    The Absence of the Possibility of Remand

The majority states that "[a]n abuse of discretion standard of review is also at odds with our decision to decline to remand section 6015(f) cases for reconsideration.  Friday v. Commissioner, 124 T.C. 220, 222 (2005)."  Majority op. p. 12.  Tax jurisprudence would be simpler, and preferable to some, if each tax case called for either abuse-of-discretion review of an agency-level record with a possibility of remand to the agency, or else de novo decision based on a new trial record with no option of agency remand.  This neat paradigm is compromised when our system calls for a decision to be based on an agency record but for the court to review the matter de novo,[21] or when our system calls for a decision to be based on a trial de novo but

---

[20]See supra notes 3-6.

[21]"[T]he standard * * * of review to be employed by the District Court [under section 7428] in examining the determination of the Secretary [as to initial qualification for tax-exempt status] * * * is to be de novo.  * * *  Normally, the Court's decision will be based on the facts as represented in the administrative record."  Inc. Trustees of the Gospel Worker Soc. v. United States, 510 F. Supp. 374, 377 n.6 (D.D.C. 1981), affd. without published opinion 672 F.2d 894 (D.C. Cir. 1981).

for the court to review for an abuse of discretion[22]--but that is
what our system sometimes calls for.  If the system would be
improved by allowing the Tax Court to remand section 6015(f)
cases to the IRS, then Congress will have to enact a "statutory
provision[] reserv[ing] jurisdiction to the Commissioner".
Friday v. Commissioner, 124 T.C. 220, 221 (2005) (denying remand
of section 6015 cases).

    D.    <u>The Comparison to Section 6015(b) and (c)</u>

The majority opines that, since our jurisdiction to decide
section 6015(f) cases has now been settled by the 2006
amendments, "there is no longer any reason to apply a different
standard of review under subsection (f) than under subsections
(b) and (c)".  Majority op. p. 13.  In fact, as we have already
shown, the relief provided in subsection (f) is materially
different from the relief provided in subsections (b) and (c)--
both in the language of those subsections (see <u>supra</u> note 8) and
in the characterization of those forms of relief in
section 6015(e) and its amendments made in 2006 (see <u>supra</u>
note 9).  The Court currently recognizes in <u>Lantz v.
Commissioner</u>, 132 T.C. ___, ___ (2009) (slip op. at 23), that
Congress "intended that taxpayers have two kinds of remedies"--

---

[22]See <u>Porter I</u>, 130 T.C. at 122-123 ("Review for abuse of
discretion does not * * * preclude us from conducting a de novo
trial.  <u>Ewing v. Commissioner</u>, 122 T.C. [32] at 40 [(2004)]"
(citing, <u>e.g.</u>, cases under secs. 446, 482, and 6404).  Remand is
not possible in a refund case, see <u>D'Avanzo v. United States</u>,
54 Fed. Cl. 183, 187 (2002), or in a deficiency case; and when
these abuse-of-discretion issues arise (as they do) in refund and
deficiency cases, remand is not an option.

"traditional" and "equitable".  If indeed Congress intended subsection (f) to provide a distinct regime, with an equitable remedy to be "requested" rather than "elected", it is perfectly consistent with that intention that it also intended us to review agency action for an abuse of discretion.

Under section 6015(f), "the Secretary may relieve" from joint liability; but when the Secretary denies such relief, and we review that decision under section 6015(e)(1)(A), we should review for an abuse of discretion.  I would so hold.

COHEN, WELLS, FOLEY, THORNTON, and MORRISON, <u>JJ</u>., agree with this dissenting opinion.