535 RAMONA INC., PETITIONER *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT

Docket No. 6443–07L.       Filed September 14, 2010.

P challenges R's right to proceed with collection of any FUTA tax from P on the ground that, taking into account credits against the tax under sec. 3302, I.R.C., for actual and deemed contributions to a State employment fund, P has no outstanding liability.

1. *Held*: We apply a de novo standard in reviewing P's challenge to its underlying liability for FUTA tax.

2. *Held*, *further*, P has failed to carry its burden of proving its entitlement to any sec. 3302, I.R.C., credit.

3. *Held*, *further*, Appeals' determination to proceed with collection of the assessments against P for 1996 is sustained.

*William E. Taggart, Jr.*, for petitioner.
*Shannon Edelstone*, for respondent.

HALPERN, *Judge*: Respondent's Appeals Office (Appeals) has determined to proceed with the collection from petitioner of Federal Unemployment Tax Act (FUTA) tax, a penalty, an addition to tax, and interest for 1996. The crux of the parties' disagreement is whether, for 1996, petitioner paid $17,553 to the State of California.

Unless otherwise stated, all section references are to the Internal Revenue Code in effect for 1996, and all Rule ref-

erences are to the Tax Court Rules of Practice and Procedure. We round all dollar amounts to the nearest dollar.

FINDINGS OF FACT

Some facts are stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.

*Background*

Petitioner was organized in California in 1996 and, during the second quarter of 1996, began operating a restaurant, Nola, in Palo Alto, California. Petitioner had a payroll of 50 to 80 individuals by the end of 1996 and had payroll expenses for the second, third, and fourth quarters of 1996.

For 1996, petitioner used a payroll service company, ExpressPay Plus (ExpressPay), to prepare its payroll. In connection with that service, ExpressPay withdrew various amounts, on various dates, from petitioner's account with Wells Fargo Bank.

Respondent's records reflect that, with respect to the last three quarters of 1996, he received $2,582 of FUTA tax deposits from petitioner.

On or about January 31, 1997, petitioner filed with the Internal Revenue Service (IRS) a Form 940–EZ, Employer's Annual Federal Unemployment (FUTA) Tax Return, relating to Nola's 1996 payroll (the 1996 Form 940–EZ). The 1996 Form 940–EZ reported contributions of $17,553 to the California unemployment fund, total taxable wages of $322,784, a FUTA tax liability (0.8 percent of $322,784[1]) of $2,582, and total FUTA tax deposits of $2,582. The California State reporting number on the 1996 Form 940–EZ, however, was that of Avenir Restaurant Group, Inc. (Avenir), a corporation owned substantially by the same individuals who own petitioner.

---

[1] The 0.8-percent multiplier is found on line 6 of the 1996 Form 940–EZ and represents the difference between the Federal FUTA tax rate, which for 1996 was 6.2 percent, and the 5.4-percent maximum rate for determining available credits against the tax under sec. 3302. In this case, that amount, $2,582, is the difference between 6.2 percent of petitioner's total taxable wages of $322,784 (i.e., $20,013) and 5.4 percent of those wages (i.e., $17,430). The assumption is that the taxpayer is entitled to a credit against its 6.2-percent FUTA tax liability because of actual and deemed contributions (5.4 percent of total taxable wages) made to a State unemployment fund.

In November 1998, the IRS asked California to certify that, for 1996, petitioner had paid wages for services performed in California and made contributions to the California unemployment fund. In January 1999, the California Employment Development Department (EDD) reported to the IRS that it had no record of petitioner's paying any wages in 1996. In March 1999, the IRS notified petitioner of the discrepancy between the EDD report and the information on the 1996 Form 940–EZ. Petitioner did not respond to the notification, and, as a result, in May 1999, respondent assessed an additional $17,430 of 1996 FUTA tax that petitioner owed, along with a Federal tax deposit penalty of $1,743 and interest of $3,730. Subsequently, respondent assessed additional penalties, an addition to tax, and interest and gave petitioner credit for small overpayments of subsequent employment tax liabilities.

In 2004, both petitioner and the IRS made further inquiries. In letters dated May 6, 2004 (to the IRS), and April 4, 2006 (to petitioner), EDD reported that, with respect to petitioner for 1996, neither taxable wages nor contributions were reported to the department; the letters further stated that petitioner's account was "inactive for tax year 1996." In February 2009, EDD advised the IRS that petitioner's unemployment insurance account with California first became active on January 1, 1999.

*Levy Notice*

On February 6, 2006, respondent issued to petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing (the levy notice) with respect to the additional FUTA tax, interest, and penalties that respondent had assessed but that petitioner had not paid. According to the levy notice, petitioner owed $28,343, which consisted of $16,137 of FUTA tax, $9,305 of accrued interest, and a late payment penalty of $2,902.

*Request for CDP Hearing*

On February 24, 2006, in response to the levy notice, petitioner timely requested a collection due process (CDP) hearing, contending that the "originally filed 940EZ is correctly filed" and requesting that respondent "allow the credit

and abate all penalties." In August 2006, petitioner had a CDP hearing with respect to the levy notice (the levy hearing).

*Lien Notice*

On March 16, 2006, respondent recorded a notice of Federal tax lien indicating that petitioner had an assessed, but unpaid, employment tax liability of $15,528 for 1996 (relating to the May 24, 1999, assessment). On March 23, 2006, respondent issued to petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing under IRC 6320 (the lien notice) advising petitioner of the recorded lien for $15,528 and of its right, by April 24, 2006, to request a hearing. Petitioner did not request a hearing in response to the lien notice, and none was held.

*Notice of Determination*

On February 20, 2007, Appeals issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (the notice of determination) by which an Appeals officer determined that "all statutory and procedural requirements" were followed and that the levy notice was "appropriate based on all available information". The notice of determination sustained in full the levy notice. [2]

*Petition*

In response to the notice of determination, petitioner timely filed the petition and an amended petition.

OPINION

I. *Introduction*

We must determine whether respondent may proceed by levy to collect the additional FUTA tax, penalties, and interest that respondent claims petitioner owes (the disputed liability). That, in large part, depends on whether petitioner made contributions of $17,553 for 1996 to the California

---

[2] The notice of determination states that petitioner's only challenge to the proposed levy was petitioner's challenge to "the existence or amount of the tax liability." It further states that petitioner was informed that it was required (and, we presume, failed) "to provide either a State Recertification letter or copies of the state returns and the front and back of the cancelled checks to verify the timely or late contributions."

unemployment fund. Before we address that question, we shall set forth some of the general rules governing our review of collection matters, set forth the relevant FUTA and California State tax provisions, summarize the parties' arguments, and address certain of respondent's evidentiary objections. Finally, we shall state our analysis and conclusion.

## II. *Sections 6320, 6330, and 6331*

Section 6331(a) authorizes the Secretary to levy against property and property rights when a taxpayer liable for taxes fails to pay those taxes within 10 days after notice and demand for payment. Section 6331(d) requires the Secretary to send the taxpayer written notice of the Secretary's intent to levy, and section 6330(a) requires the Secretary to send the taxpayer written notice of his right to a hearing before Appeals at least 30 days before any levy begins. A taxpayer receiving a notice of Federal tax lien has hearing rights similar to the hearing rights accorded to a taxpayer receiving a notice of intent to levy. See sec. 6320(c).

After the hearing, an Appeals officer must determine whether and how to proceed with collection, taking into account, among other things, collection alternatives the taxpayer proposed and whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary. See sec. 6330(c)(3). The taxpayer may raise its underlying liability at the hearing if it did not receive any statutory notice of deficiency for the liability or did not otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B).

Respondent concedes that petitioner was entitled to, and did, raise its underlying liability (i.e., the disputed liability) at the levy hearing and that the disputed liability is properly before the Court. With respect to the disputed liability, we review the record made here and not the administrative record made before Appeals, and we apply a de novo standard of review. See *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–182 (2000); cf. *Porter v. Commissioner*, 132 T.C. 203, 210 (2009) (de novo standard of review for cases brought under section

6015(f)). Petitioner bears the burden of proof. See Rule 142(a). [3]

III. *Relevant FUTA and California State Tax Provisions*

A. *FUTA Provisions*

For 1996, section 3301(1) imposes on every employer a 6.2-percent excise tax with respect to wages paid to its employees. Under section 3306(b), wages subject to tax include (with certain exceptions not here relevant) "all remuneration for employment" that does not exceed $7,000 for the calendar year.

Section 3302 allows taxpayers credits against that tax for certain actual and deemed contributions to State unemployment funds. Section 3302(a) provides a credit for actual contributions to such funds during the taxable year (the normal credit). Section 3302(b) provides an additional credit (the additional credit)

equal to the amount, if any, by which the contributions [the taxpayer is] required to * * * [pay] with respect to the taxable year were less than the contributions such taxpayer would have been required to pay if throughout the taxable year he had been subject under such State law to the highest rate applied thereunder * * * [or] 5.4 percent, whichever rate is lower.

The additional credit allows employers with good experience ratings (and thus a lower State contribution rate) to avoid paying more Federal tax than those employers with bad experience ratings. In pertinent part, section 31.3302(b)–2(b), Employment Tax Regs., provides that the additional credit shall not be allowed unless the taxpayer submits

To the district director a certificate of the proper officer of each State (with respect to the law of which the additional credit is claimed) showing for the taxpayer—

(1) The total remuneration with respect to which contributions were required to be paid by the taxpayer under the State law with respect to such calendar year; and

(2) The rate of contributions applied to the taxpayer under the State law with respect to such calendar year.

---

[3] Sec. 7491(a)(1), which, under certain circumstances, shifts the burden of proof, is limited in its application to factual issues "relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B" of the Internal Revenue Code. The factual issue in this case is whether petitioner is entitled to a credit under sec. 3302 against its liability for FUTA taxes imposed by sec. 3301, which is in subtit. C. Therefore, sec. 7491(a)(1) is inapplicable.

Section 3302(c)(1) limits the credits against the tax imposed by section 3301 to 90 percent of that tax. In applying the 90-percent limit on total credits, however, the tax is computed at a deemed rate of 6 percent rather than at the actual 6.2-percent rate. See sec. 3302(d)(1). Thus, in effect, total credits may not exceed 5.4 percent (90 percent × 6 percent) of the employer's FUTA wage base.

### B. *California Unemployment Insurance Code*

Pursuant to Cal. Unemp. Ins. Code sec. 675 (West 1986), an employer is subject to the California unemployment compensation system if, during any day within the current or preceding calendar year, the employer has or had "in employment one or more employees * * * [to whom it pays or paid wages] in excess of one hundred dollars ($100) during any calendar quarter." Employment includes "an individual's entire service" performed in California. *Id.* sec. 602. Wages means "all remuneration payable to an employee for personal services" that does not exceed $7,000 during any calendar year. *Id.* secs. 926, 930. Thus, the California wage base is identical to the Federal FUTA wage base. The actual contribution rate for each employer generally depends on the ratio of the employer's reserve account (i.e., the employer's unemployment insurance contributions to California) to its average base payroll, both as of a "computation date". *Id.* secs. 977, 1026. The maximum contribution rate is 5.4 percent of wages, which equals the highest rate that may be used in determining a taxpayer's additional tax under section 3302(b). *Id.* sec. 977.

### IV. *Arguments of the Parties*

In their opening and reply briefs, the parties frame the issue regarding alleged unpaid FUTA taxes as a dispute over whether petitioner has satisfied its burden of proving that it did, in fact, make unemployment insurance contributions to California of $17,553 as stated on its 1996 Form 940–EZ, thereby entitling it to the credit taken on that return.

Rule 151(e) governs the content of briefs and provides that all briefs shall contain, among other things, proposed findings of fact (with "references to the pages of the transcript or the exhibits or other sources relied upon to support

the * * * [proposed finding]"), a concise statement of the points on which the party relies, and the party's argument, "which sets forth and discusses the points of law involved and any disputed questions of fact." At the conclusion of the trial, the Court specifically instructed counsel for the parties to incorporate in the discussion (argument) section of their briefs cross-references to any proposed findings of fact on which they relied. Petitioner's counsel has failed both to follow that instruction and to include in petitioner's opening brief a statement, concise or not, of the points on which petitioner relies. We have done our best to understand petitioner's arguments, but, particularly with respect to the crucial question of how the evidence in the case supports petitioner's claim that it paid $17,553 to California, the failures of petitioner's counsel make petitioner's arguments somewhat unclear. [4]

Petitioner argues that respondent's disallowance of any credit for the $17,553 that petitioner reported on its 1996 Form 940–EZ as paid to the California unemployment fund

was apparently based on erroneous information Respondent received from EDD. Respondent's disallowance of $17,430.33 of credit apparently was the result of a difference in association of Federal Identification Numbers with EDD Employer Identification Numbers on the respective records of Respondent and EDD.

EDD confirmed that it received substantial sums of money in 1996 under * * * the EDD number under which Petitioner reported to Respondent that it had paid unemployment insurance to the State of California. * * *

Apparently in support of that argument (we say apparently because, as stated, petitioner's counsel has failed to cross-reference petitioner's arguments and proposed findings of fact), petitioner proposes a number of facts for us to find. First, ExpressPay (1) "deposited the employment taxes, and paid the related charges, associated with * * * [petitioner's 1996] payroll" and (2) "prepared the federal and California employment tax returns associated with * * * [petitioner's] 1996 payroll". Second, ExpressPay "withdrew funds for the payroll taxes and related charges required to be deposited or paid in

---

[4] The record is not small, consisting in part of 370 pages of trial transcript and hundreds of pages of written exhibits admitted into evidence. Petitioner's counsel further failed to follow our briefing instructions by omitting a detailed table of contents to petitioner's approximately 24 pages of proposed findings of fact.

connection with * * * [petitioner's 1996 payroll]". Third, most pertinently, ExpressPay "made payments in the total amount of $17,552.98 to the State of California for unemployment insurance relating to * * * [petitioner's 1996 payroll]".[5]

Respondent's argument is straightforward: Petitioner is entitled to no credit against its 1996 FUTA tax because it has failed to show that, for 1996, it made any unemployment fund contribution to California.

## V. *Evidentiary Issues*

At trial, we reserved ruling on respondent's objections to four exhibits petitioner proffered. The first three relate to petitioner's 1996 operations. They are Exhibit 20–P, a page from petitioner's tax liability register; Exhibit 21–P, a tax status ledger report for the third and fourth quarters of 1996; and Exhibit 22–P, a year-to-date register (run date 12/30/96). The fourth exhibit, Exhibit 40–P, purports to be a page from a tax liability register for Avenir (run date 12/30/96). Respondent objects to the four documents on various grounds, including, with respect to all of them, that they constitute inadmissible hearsay. At the conclusion of the trial, we ordered the parties to address on brief respondent's objections to all four exhibits.

Petitioner's opening brief contains a section entitled "Findings of Fact Dependent on Contested Documents". Petitioner supports those proposed findings with references to Exhibits 20–P and 21–P but with no reference to either Exhibit 22–P or Exhibit 40–P. We assume, therefore, that petitioner does not rely on the latter two exhibits to support its arguments, and we shall not consider them further. We shall not rule on the admissibility of Exhibits 20–P and 21–P because, in considering their admissibility, we have read them, and, even were we to overrule respondent's objections, petitioner would still fail to carry its burden of proof.

---

[5] Alternatively, petitioner states: "For * * * [1996], ExpressPay Plus made California unemployment insurance payments in the total amount of $17,552.98 on behalf of Petitioner."

VI. *Analysis*

A. *Petitioner's Failure To Prove Any Unemployment Insurance Contribution to California for 1996*

Petitioner has failed to support the findings of fact that it relies on in support of its argument that, for 1996, it made unemployment insurance contributions of $17,553 to California.

In support of its proposed findings that ExpressPay deposited employment taxes on its behalf and prepared the associated tax returns, petitioner principally relies on the testimony of its accountant, J. Kelly Monaghan, who testified about the operation of payroll services in general but conceded that he had not been involved in any way with ExpressPay and was not familiar with its business practices or day-to-day routines. Petitioner also relies on stipulations that (1) petitioner used ExpressPay's services for 1996 and (2) ExpressPay withdrew money from petitioner's account. Finally, petitioner relies on the testimony of Gregory H. St. Claire, who organized petitioner, and who testified that petitioner used ExpressPay to prepare its payroll. While none of that evidence is inconsistent with petitioner's proposed findings of fact, none of it directly supports them. And, of course, we have the evidence of EDD reporting that, with respect to petitioner, no taxable wages and contributions were reported to the department for 1996 and petitioner's unemployment insurance account with California first became active on January 1, 1999. Petitioner has failed to convince us that ExpressPay deposited employment taxes on its behalf and prepared the associated tax returns.

While there is adequate support for petitioner's proposed finding that ExpressPay prepared petitioner's 1996 payroll and, in connection with its payroll duties, withdrew funds from Wells Fargo bank, petitioner has not convinced us that ExpressPay withdrew funds from that bank and paid $17,553 (or any lesser amount) to California for unemployment insurance relating to petitioner's 1996 payroll. Petitioner's principal support for its argument that ExpressPay made unemployment insurance contributions to California on its behalf is Exhibit 20–P, the page from petitioner's tax liability register, and Exhibit 21–P, petitioner's tax status ledger

reports for the third and fourth quarters of 1996. At best, those documents suggest total contributions on petitioner's behalf of $12,589. But they do not prove that any amount was actually paid to California for 1996, only that the foregoing amount may have been owed. Indeed, the stipulated Wells Fargo bank statements, while showing that withdrawals were made from the account during 1996, do not indicate the purpose of the withdrawals, and we do not discern any connection between those withdrawals and the amounts reflected in the tax status ledger report. Again, we have before us the EDD reports, which state that petitioner reported nothing, paid nothing, and had no relationship with the department in, or for, 1996.

In short, we are unable to make the findings of fact that petitioner proposes in support of its argument that, for 1996, it made unemployment insurance contributions of $17,553 to California. Indeed, petitioner has failed even to propose findings of fact that would support its argument that it should receive credit for payments to California that were reported to the IRS as having been made under Avenir's State reporting number. Petitioner has failed to prove that, for 1996, it made any unemployment insurance contribution to California.

### B. *No Credit Allowed*

Section 3302(a) allows the normal credit for actual contributions to State unemployment funds. Since petitioner has failed to prove that it made any contribution to the California unemployment fund for 1996, petitioner is entitled to no normal credit.

To claim the additional credit provided for in section 3302(b), petitioner must satisfy the State certification requirement imposed by section 31.3302(b)–2(b), Employment Tax Regs. Petitioner has failed to adduce evidence (indeed, even to claim) that the requirement has been satisfied. Petitioner is not entitled to the additional credit.

Petitioner is entitled to no section 3202(a) or (b) credit in determining its FUTA liability for 1996. Respondent did not err in assessing an additional $17,430 of 1996 FUTA tax.

C. *Penalties*

The levy notice listed a late payment penalty of $2,902. Respondent has assessed an addition to tax under section 6651(a)(2) for failure to pay the tax shown on a return and a penalty under section 6656 for failure to make deposit of taxes. In neither the petition nor the amended petition does petitioner assign error to any addition to tax or penalty, and petitioner does not in its briefs raise any reasonable cause defense. See secs. 6651(a)(2), 6656(a). Respondent has shown an adequate ground for imposing the addition to tax and the penalty, and we shall sustain them.

D. *Jurisdiction Over the Notice of Tax Lien*

The issue here is not clear. At trial, petitioner, for the first time, raised some question as to the propriety of the lien notice. Petitioner's witness, Mr. Monaghan (petitioner's accountant), who participated in the levy hearing, did not recall that there was any discussion of the lien. As noted, petitioner did not request a hearing, pursuant to section 6320(a)(3)(B), regarding the lien notice, and none was held. Petitioner, in its opening brief, proposes that we find facts consistent with the issuance of the lien notice, but petitioner does not further discuss the lien or raise any issue with respect to it. Respondent, in his opening brief, argues that we have no jurisdiction over the lien notice. In response (and apparently in disagreement), petitioner argues that one of the opportunities available to taxpayers at a CDP hearing is the right to offer collection alternatives, see sec. 6330(c)(2)(A)(iii), and that the recording of a lien is a collection alternative. Petitioner then suggests that, by recording the lien before the levy hearing, respondent has proposed a collection alternative that petitioner might have offered and that, therefore, "[i]t would be wasteful to require a second request for a CDP hearing in order to place in issue a matter that already appears to * * * be in issue."

Aside from the inconsistency of suggesting that petitioner might have offered a collection alternative (a lien against its assets) that it obviously opposes, petitioner's implicit argument that there is something that we must consider with respect to the lien notice fails because of the absence of any evidence that the lien notice (or any other collection alter-

native) was even discussed at the hearing and the absence of any reference to it in the notice of determination. Under those circumstances, we agree with respondent that this case is governed by *Offiler v. Commissioner*, 114 T.C. 492, 498 (2000), in which we held that our "jurisdiction under section 6330(d) is dependent on the issuance of a valid notice of determination and a timely petition for review." Because neither the notice of determination nor the petition referred to the propriety of the lien notice, we lack jurisdiction under section 6330(d) to consider the lien notice.

## VII. *Conclusion*

The Appeals officer's determination affirming the levy notice against petitioner for 1996 is sustained. Respondent may proceed by levy to collect the disputed liability.

> *An appropriate order and decision will be entered.*