**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-82

UNITED STATES TAX COURT

JUDITH K. BLOMBERG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12250-13S.                     Filed August 26, 2014.

Judith K. Blomberg, pro se.

<u>John Schmittdiel</u> and <u>Christina L. Cook</u>, for respondent.

SUMMARY OPINION

MARVEL, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463[1] of the Internal Revenue Code in effect when the petition was filed.

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times, and all Rule references are to the Tax
Court Rules of Practice and Procedure.  Some monetary amounts are rounded.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Pursuant to section 6015 petitioner seeks review of respondent's determination to deny her relief from joint and several liability for Federal income tax for 2010. Respondent determined an income tax deficiency of $14,014 in petitioner and her former husband's Federal income tax for 2010 and an accuracy-related penalty under section 6662(a) of $2,803. Petitioner resided in Minnesota when she filed her petition.

## Background

Some of the facts have been stipulated and are so found. The stipulated facts and the facts drawn from stipulated exhibits are incorporated herein by reference.

Petitioner graduated from law school in 1977 and is licensed to practice law in Texas. She currently works as a lifecourse care guide, providing care to patients with limited life expectancies.

## I. Sale of Carnegie House

From a date that the record does not disclose to July 19, 2011, petitioner was married to Don Frederick Russell. In 2010, during the pendency of their divorce proceeding, petitioner and Mr. Russell sold a house at 3012 Carnegie

Street, Houston, Texas (Carnegie house), for $1.46 million. On December 30, 2010, petitioner and Mr. Russell entered into an agreement whereby net proceeds of $825,547 from the sale of the Carnegie house would be divided as follows: (1) petitioner and Mr. Russell would each receive $200,000; (2) the remainder would be placed in escrow for 30 days; and (3) at the end of the 30-day period, 50% of the remainder would be paid to the trust account of Beverly Lord (petitioner's attorney) and 50% to the trust account of Richard Mintz (Mr. Russell's attorney). In April 2011 the escrow company disbursed $212,773 to each of the attorneys.

## II. Divorce Decree

On July 19, 2011, the Harris County District Court of Texas (Harris County district court) entered a final decree of divorce, dissolving the marriage of petitioner and Mr. Russell. The decree provided that Mr. Russell would receive the remaining Carnegie house funds in the Mintz trust account after certain payments, including a $32,500 payment to petitioner, had been made. The decree further provided: "Failure to distribute said funds does not relieve DON FREDERICK RUSSELL of the obligation to pay JUDITH KAY RUSSELL the sum of $32,500." With respect to petitioner and Mr. Russell's 2010 Federal income tax liability, the decree provided:

It is agreed that DON FREDERICK RUSSELL and JUDITH KAY RUSSELL shall be equally responsible for all federal income tax liabilities of the parties from January 1, 2010 through December 31, 2010, and each party shall timely pay 50 percent of any deficiencies, assessments, penalties, or interest due thereon * * *. The parties agree that nothing contained herein shall be construed as or is intended as a waiver of any rights that a party has under the "Innocent Spouse" provisions of the Internal Revenue Code.

III.    2010 Federal Income Tax Return

Sometime around August 2011 petitioner began experiencing difficulty receiving mail at her Houston address. On September 25, 2011, petitioner informed Mr. Russell that he should use Ms. Lord's address instead of petitioner's Houston address to send mail to petitioner.

On September 23, 2011, Mr. Russell wrote to petitioner, stating: "[I]t looks like we're going to have some capital gains tax on the sale of the house. According to * * * [Mr. Russell's advisers], the costs basis for the house is the purchase price plus improvements, closing costs on purchase and sale, including commissions, etc." Mr. Russell then listed the purchase price, various improvements, and closing costs, totaling $840,578. He calculated the gain by subtracting the adjusted basis from the sale price of $1.46 million and reduced the gain by the $500,000 personal residence exclusion[2] to arrive at a taxable gain of

_____

[2]Pursuant to sec. 121(a) and (b), taxpayers who file joint returns may

(continued...)

$119,422. On September 25, 2011, petitioner replied: "You don't have all the correct information and you appear to be missing about $100,000 in improvements." Later that day, petitioner provided Mr. Russell with a list of home improvement costs, stating:

> There are many changes that need to be made and there should be no real capital gain tax to be paid. After 17 years of ownership, I think there are items we both forgot that would eliminate any remaining tax. * * *
>
>    *  *  *  *  *  *  *
>
> Improvements are at a minimum at least $105,128.00 per my above list. Your numbers need to be adjusted. I am sure there are other items I have forgotten. I think our tax should be zero as over 17 years we would have had about $2,000 a year in repairs and improvements not on the list. That estimate of other improvements would eliminate the tax.

Later that night petitioner provided Mr. Russell with a second list of home improvement costs, stating: "Adds an additional $19,500 to improvements I previously sent. Miscellaneous repairs over 17 years that I have not remembered should eliminate the rest of the gain." Finally, petitioner wrote to Mr. Russell again that night stating: "If you add your list of $12,000 plus [those] which I forgot to everything I sent, the capital gains are eliminated."

---

[2](...continued)
exclude from gross income up to $500,000 of gain from the sale or exchange of the taxpayers' "principal residence".

The next morning Mr. Russell wrote to petitioner, stating: "Got all of your comments. Will make changes." Petitioner replied, reminding him to send her mail to Ms. Lord because she was experiencing difficulty receiving mail at her Houston address.

On October 4, 2011, Mr. Russell informed petitioner that a draft of the 2010 return had been delivered to Ms. Lord's office. On October 9, 2011, petitioner wrote to Mr. Russell, asking him to pick up the signed return and her share of the tax payment from Ms. Lord's office later that week. Petitioner continued:

> I have no way of verifying some of the information you supplied so I am signing with the understanding that I cannot accept or reject your information as I do not have documentation to know what is accurate.
>
> My share of the taxes is 50% of 17,359.00 ($8,679.00) of which I have already paid $7,212.00 per the tax return (my withholding). So I owe $1,467.00 and my check will be for that amount.

On October 10, 2011, petitioner signed the 2010 return at Ms. Lord's office.[3] The 2010 return did not report any gain from the sale of the Carnegie house.

---

[3]At trial petitioner testified that she did not review the return because she was under "extreme stress". However, in the light of the record, we do not find credible petitioner's assertion that she did not review the return, and we need not accept her self-serving testimony. See Shea v. Commissioner, 112 T.C. 183, 189, (1999).

## IV. Audit of 2010 Return

On August 3, 2012, Mr. Russell informed petitioner that he had received a notice from the Internal Revenue Service (IRS) regarding the sale of the Carnegie house and that a response was due by August 22, 2012. Mr. Russell further informed petitioner that he was working with his accountant to resolve the issue. On August 13, 2012, Mr. Russell asked petitioner to provide him with copies of any receipts that she had for improvements made on the house. That same day, petitioner replied to Mr. Russell, stating:

> I have no receipts. You need to get them for [sic] the contractors or companies that did the work. * * *

> I sent you the information you needed in prior emails. You should be able to figure it out. I am sure you can get the info you need. * * *

On August 15, 2012, petitioner asked Mr. Russell not to contact her directly and to direct all future communications with her through her attorney. On September 25, 2012, petitioner informed Mr. Russell's accountant that Ms. Lord no longer represented her. Petitioner did not, however, provide Mr. Russell's accountant with an alternate address at which she could be reached.

In a Notice CP-2000 dated November 19, 2012, respondent determined that petitioner and Mr. Russell had failed to report gain of $43,332 from the sale of the Carnegie house in 2010 and that they were liable for an income tax deficiency of

$14,014 and an accuracy-related penalty of $2,803. The notice informed petitioner and Mr. Russell that if they paid their tax liability in full by December 19, 2012, they would owe $17,766. Pursuant to the notice and enclosed with a letter dated December 14, 2012, Mr. Russell sent the IRS an $8,883 payment representing his half of the deficiency and the accuracy-related penalty. The IRS acknowledged Mr. Russell's payment in a letter dated February 4, 2013.

On April 29, 2013, respondent mailed a notice of deficiency in which respondent determined an income tax deficiency of $14,014 and an accuracy-related penalty of $2,803 for 2010.

## V. Payment of $32,500 Required by Divorce Decree

On August 16, 2011, Ms. Lord informed Mr. Mintz that petitioner had not received the $32,500 payment required by the divorce decree. Subsequently, on August 19, 2011, Mr. Mintz wrote a check to petitioner for $32,500, which Ms. Lord received on August 23, 2011. On October 21, 2011, petitioner attempted to deposit the check, but it was rejected for insufficient funds.

On September 16, 2011, Mr. Mintz wrote a check to Mr. Russell for the remaining Carnegie house funds of $116,932. We infer from the record that sometime between September 16 and October 21, 2011, Mr. Russell successfully deposited his check.

On February 20, 2012, petitioner filed a grievance against Mr. Mintz with the State Bar of Texas' Office of the Chief Disciplinary Counsel because he failed to pay her the $32,500 required by the divorce decree. On December 21, 2012, the Supreme Court of Texas accepted Mr. Mintz's resignation from the bar. At that time, Mr. Mintz had three disciplinary matters pending against him. Also on December 21, 2012, the Supreme Court of Texas issued an order requiring Mr. Mintz to pay petitioner restitution of $32,500 as a condition for reinstatement.

On March 1, 2013, Mr. Mintz wrote to petitioner, Mr. Russell, and Ms. Lord apologizing for the missing funds and for mismanaging his practice. Mr. Mintz admitted that he had operated his practice with funds from his client trust account and further admitted that he had paid both business and living expenses from that account. Mr. Mintz explained that while the funds had been in the client trust account when he wrote the $32,500 check to petitioner in August 2011, there was a shortfall when she attempted to negotiate her check months later.

In or around February 2013 petitioner filed an enforcement action against Mr. Russell and Mr. Mintz in the Harris County district court to compel them to pay $32,500. In a counterpetition Mr. Russell sought, among other things, to compel petitioner to pay her half of the 2010 Federal income tax deficiency and penalty. In an order dated June 26, 2013, the Harris County district court granted

petitioner's enforcement petition in part and entered judgment against Mr. Mintz of $32,500, plus accrued prejudgment interest of $3,047, postjudgment interest of 5%, and attorney's fees of $6,538. The court denied petitioner's claim for relief against Mr. Russell and also denied Mr. Russell's counterpetition. As of the date of trial Mr. Mintz had not made any payment on the judgment. Petitioner, however, was taking steps to collect on her judgment.

VI.    Petitioner's Financial Condition

On or around May 23, 2013, petitioner submitted to the IRS a Form 8857, Request for Innocent Spouse Relief. In an exhibit enclosed with her request, petitioner described her financial status as of May 23, 2013, as follows:

| Assets | | Debts | |
|---|---|---|---|
| Townhouse | $190,500 | Credit card | $20,000 |
| Automobile | 30,000 | Legal fees | 1,500 |
| IRA | 6,000 | Car loan | 6,400 |
| Cash | 70,000 | Total | 27,900 |
| Personal property | 30,000 | | |
| Iowa property | 1,000 | | |
| Total | 327,500 | | |

Petitioner claimed that she had monthly expenses totaling $5,563 as of May 2013.[4] In rejecting petitioner's request for relief under section 6015(f), respondent

---

[4]At trial petitioner testified that she had current cash holdings of $50,000.

concluded that petitioner would not suffer financial hardship if section 6015(f) relief were denied.

## Discussion

Generally, married taxpayers who file a joint Federal income tax return are jointly and severally liable for the tax reported or reportable on the return. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). Section 6015, however, allows a spouse to obtain relief from joint and several liability in certain circumstances. Section 6015(a)(1) provides that a spouse who has made a joint return may elect to seek relief from joint and several liability under section 6015(b) (dealing with relief from liability for an understatement of tax with respect to a joint return). Section 6015(a)(2) provides that an eligible spouse may elect to limit that spouse's liability for any deficiency with respect to a joint return under section 6015(c) (dealing with relief from joint and several liability for taxpayers who are no longer married or who are legally separated or no longer living together). If a taxpayer does not qualify for relief under either section 6015(b) or (c), the taxpayer may seek equitable relief under section 6015(f). Petitioner does not argue that she is entitled to relief under section 6015(b) or (c) but argues that she is entitled to relief under section 6015(f).

I.      The Standard and Scope of Review

In determining whether a taxpayer is entitled to equitable relief under section 6015(f), we apply a de novo standard and scope of review.  Porter v. Commissioner, 132 T.C. 203, 210 (2009).  Petitioner bears the burden of proving that she is entitled to relief under section 6015(f).  See id.; see also Rule 142(a)(1). The Commissioner has prescribed guidelines in Rev. Proc. 2013-34, 2013-43 I.R.B. 397, modifying and superseding Rev. Proc. 2003-61, 2003-2 C.B. 296, for determining whether a requesting spouse qualifies for relief under section 6015(f).  This Court considers those guidelines, but is not bound by them, in evaluating the facts and circumstances of a case.  See Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Porter v. Commissioner, 132 T.C. at 210.

II.     Threshold Conditions

Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399-400, sets forth seven threshold conditions that a requesting spouse must satisfy to be eligible to submit a request for relief under section 6015(f):  (1) the requesting spouse filed a joint Federal income tax return for the tax year or years for which relief is sought; (2) the requesting spouse does not qualify for relief under section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not

transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return; and (7) the liability from which relief is sought is attributable to an item of the nonrequesting spouse, unless an exception applies. An exception applies in any one of the following circumstances: (1) the item is attributable to the requesting spouse solely due to the operation of community property law; (2) the item is only nominally owned by the requesting spouse; (3) unbeknownst to the requesting spouse, the funds intended for the payment of tax were misappropriated by the nonrequesting spouse for the nonrequesting spouse's benefit; (4) the requesting spouse establishes that he or she was the victim of abuse before the return was filed; or (5) the requesting spouse establishes that the nonrequesting spouse's fraud is the reason for the erroneous item. Id. sec. 4.01(7).

Petitioner does not meet the seventh threshold requirement because the item giving rise to the deficiency is the gain from the sale of the Carnegie house. Petitioner jointly owned the house with Mr. Russell, joined with him in selling the house, and received half of the net proceeds. The gain from the sale of the house is therefore attributable to both her and Mr. Russell. Moreover, Mr. Russell has already paid the IRS his half of the deficiency and the penalty. Therefore, the

unpaid portions of the deficiency, the penalty, and the interest are properly attributable to petitioner.

Petitioner attempts to avoid the above conclusion by claiming that she qualifies under the abuse exception of Rev. Proc. 2013-34, sec. 4.01(7)(d), 2013-43 I.R.B. at 400. Petitioner alleges that "[a]buse did exist during the marriage but not the type of abuse that is stated on the innocent spouse form." The abuse exception requires that as a result of the abuse, the requesting spouse was not able to challenge the treatment of any items on the return. Id.; see also Deihl v. Commissioner, T.C. Memo. 2012-176 (holding that the abuse exception did not apply where the requesting spouse failed to establish that she did not challenge the treatment of items for fear of retaliation by the nonrequesting spouse).

Petitioner has not shown that the abuse she allegedly suffered prevented her from challenging the decision not to report gain from the sale on the 2010 joint return. Although petitioner contends that she did not give Mr. Russell her address because of "safety concerns", the record establishes that she asked Mr. Russell to send correspondence to Ms. Lord's office because she was experiencing difficulty receiving mail at her Houston address. Equally unconvincing is petitioner's contention that she asked Mr. Russell "to cease email communication in August 2012 when the emails from him became threatening". The record is devoid of any

threatening emails from Mr. Russell, and we infer from their absence that none exist.

The record does not establish that petitioner suffered any abuse. The record does establish, however, that petitioner actively intervened to convince Mr. Russell that they had no gain from the Carnegie house sale. Mr. Russell initially calculated taxable gain on the sale to be $119,422. Petitioner, however, repeatedly wrote to Mr. Russell stating that any gain was eliminated by the repairs and improvements that they had made to the house. These exchanges demonstrate that, not only did petitioner challenge the tax treatment of the Carnegie house sale, but that the 2010 joint return reflected her position.

On this record, we find that petitioner does not satisfy the seventh threshold condition of Rev. Proc. 2013-34, supra.[5] Consequently, we need not address the factors for determining equitable relief under Rev. Proc. 2013-34, sec. 4.02 or 4.03, 2013-43 I.R.B. 400-403.

III.   Other Arguments Raised by Petitioner

Although we give due consideration to the guidelines set forth in Rev. Proc. 2013-34, supra, our consideration of the guidelines does not prevent us from

_____

[5]Neither party argues that any of the other exceptions to the seventh threshold requirement applies in this case.

considering additional facts and circumstances and arguments in deciding whether the taxpayer is entitled to equitable relief under section 6015(f).  See Pullins v. Commissioner, 136 T.C. at 438-439; Porter v. Commissioner, 132 T.C. at 210. Accordingly, we address petitioner's other arguments for relief.

Petitioner argues that she was deprived of the opportunity to contest the deficiency amount because Mr. Russell continued to send documents to Ms. Lord after petitioner informed him that Ms. Lord no longer represented her and because Mr. Russell failed to send IRS correspondence to her within three days of receipt, as required by the divorce decree.  Petitioner alleges that Mr. Russell received an IRS notice as early as August 1, 2012.

We do not find this argument to be persuasive for several reasons.  Mr. Russell sent correspondence to Ms. Lord at petitioner's direction.  When petitioner informed Mr. Russell that Ms. Lord no longer represented her, she did not provide him with a new address to which he should send future correspondence.  In addition, the record shows that Mr. Russell informed petitioner of the IRS notice as early as August 3, 2012, and on August 13, 2012, asked her for any receipts in her possession that would support a higher adjusted basis in the Carnegie house. Although the record does not clearly establish whether Mr. Russell timely sent a copy of the notice to Ms. Lord, petitioner has failed to prove that she was

prejudiced by any alleged noncompliance. At trial petitioner admitted that she was aware of the IRS audit of the 2010 return and further admitted that she submitted information during the audit that contributed to a significant reduction in the original proposed deficiency. Moreover, petitioner does not challenge the deficiency in this current proceeding. Accordingly, we decline to award relief on this ground.

Petitioner also argues that as of October 10, 2011, she had paid $7,217[6] in Federal income tax through her withholdings and Mr. Russell had made no payments. The record shows, however, that petitioner had already taken her withholding into account in calculating how much of the tax liability shown on the 2010 return she was required to pay. Excluding the current unpaid balance of the 2010 liability, the record supports the inference that petitioner and Mr. Russell each paid 50% of the joint tax liability shown on their 2010 return. Accordingly, we decline to award relief on this ground.

Petitioner contends that the Harris County district court has already "ruled that the 50% tax liability provision in the divorce decree is not enforceable" against her. Petitioner bases her argument on the court's order entered June 26, 2013, which denied Mr. Russell's counterpetition. We do not interpret the Harris

---

[6]The record establishes that petitioner's withholding for 2010 was $7,212.

County district court's summary denial of Mr. Russell's counterpetition to constitute its determination as to petitioner's Federal tax liability. We cannot discern from the record the reasons for the summary denial of Mr. Russell's counterpetition and will not infer from this action that the State court made any determination with respect to petitioner's Federal income tax liability.

Finally, petitioner argues that she is entitled to equitable relief under section 6015(f) because she was never paid the $32,500 to which she was entitled under the divorce decree. While we are sympathetic to petitioner's situation and understand her frustration, the record establishes that she did not receive the money because Mr. Mintz mismanaged his client trust account. The record further establishes that Mr. Russell received the remaining amount of the house sale proceeds after the $32,500 had already been subtracted. Petitioner has failed to establish that Mr. Russell was in any way responsible for, or benefited from, Mr. Mintz's financial improprieties. We also note that petitioner has a judgment against Mr. Mintz for the full $32,500 she is owed under the divorce decree plus interest and attorney's fees, and she is taking steps to collect on that judgment.

Petitioner has not established that Mr. Mintz's failure to pay the $32,500 has caused her any financial difficulty or that a denial of relief under section 6015(f) would result in financial hardship. The record demonstrates that petitioner

has sufficient assets to pay the unpaid balance of the 2010 tax liability. Accordingly, we decline to grant relief on this ground as well.

IV.    Conclusion

After considering all of the facts and circumstances and the parties' arguments for and against relief, we conclude that petitioner is not entitled to relief from joint and several liability under section 6015(f).

To reflect the foregoing,

Decision will be entered for

respondent.