T.C. Summary Opinion 2021-31

UNITED STATES TAX COURT

DENISE SADJIAN CURCIO, Petitioner, AND KENNETH CURCIO, Intervenor
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5733-19S.                          Filed August 31, 2021.

<u>Christine S. Speidel</u>, Melissa Griest (student), and Jonathan Onufrak (student), for petitioner.

Kenneth Curcio, pro se.

<u>Harry J. Negro</u> and <u>John J. Brady</u>, for respondent.

SUMMARY OPINION

GUY, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a final determination letter dated December 19, 2018, respondent denied petitioner's claim for relief from joint and several liability under section 6015(f) for the taxable year 2014 (sometimes referred to as the year in issue).  Petitioner filed a timely petition for review invoking the Court's jurisdiction under section 6015(e)(1)(A),[2] and her former spouse (intervenor) subsequently filed a notice of intervention pursuant to section 6015(e)(4) and Rule 325 opposing petitioner's claim.

Shortly before trial respondent reconsidered and asserted that petitioner is entitled to full relief from joint and several liability under section 6015(f) for the

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Monetary amounts are rounded to the nearest dollar.

[2]Petitioner resided in Pennsylvania when the petition was filed.

year in issue. We nevertheless must decide whether petitioner is entitled to spousal relief given that intervenor continues to oppose petitioner's claim.

## Background[3]

### I. Petitioner's Marriage

Petitioner and intervenor were married on October 30, 1993, and they are the parents of three minor children. As discussed in greater detail below, petitioner and intervenor separated in 2018 and were divorced in 2020.

### II. Education and Professional Experience

#### A. Petitioner

Petitioner earned a bachelor of arts degree in international relations and economics from Ursinus College and a master of science degree in counseling psychology from Chestnut Hill College. While married to intervenor, petitioner occasionally worked as a life coach and consultant, but she generally spent most of her time caring for the couple's children.

#### B. Intervenor

Intervenor earned a bachelor of science degree in business administration with a concentration in accounting from Bloomsburg University. While married to petitioner, intervenor earned a living as an accountant, preparing Federal tax

---

[3]Some of the facts have been stipulated.

returns and financial reports and sometimes serving as chief financial officer for his clients.

III. Car Accident and Settlement

In September 2014 petitioner and two of her children were involved in a car accident. Petitioner's vehicle was struck by another vehicle on the driver's side door, and she suffered severe injuries and was hospitalized for several weeks.

Petitioner and intervenor, individually and on behalf of their children, filed a lawsuit seeking damages related to the car accident. In July 2015 the couple settled the suit for $2 million.

After paying legal fees, costs, and medical bills, repaying a loan from petitioner's cousin that the couple had used to pay certain expenses during petitioner's rehabilitation, and complying with a mandate to set aside $25,000 for each of the children involved in the accident, petitioner and intervenor were left with about $1 million from the settlement. With intervenor's consent, petitioner deposited those funds into an account in her name alone (settlement account).

IV. Household Finances

During the couple's marriage, intervenor was the family's primary source of income. Although petitioner and intervenor shared a joint checking account, intervenor generally controlled the couple's finances and the checking account.

The checking account was frequently overdrawn, leading to numerous bounced checks and overdraft charges. In 2014, with the aim of keeping the checking account in balance, petitioner began to send emails to intervenor informing him of all purchases and withdrawals that she made through the account. In the latter half of 2015, after receiving the settlement proceeds described above, petitioner began to manage most of the family's bills and expenses.

## V. New Home and Business Investment

In September 2017 petitioner withdrew funds from the settlement account and paid $605,500 in cash for a new home. The new home was situated on approximately one acre of land and included a pool and pool house.

In February 2018 petitioner withdrew $70,000 from the settlement account and invested the funds in a new business. The record does not include any additional information about the success or failure of this enterprise.

## VI. Separation and Divorce

Petitioner and intervenor's marriage had been strained for some time, and in May 2017 the couple executed an "Agreement by Father to Provide Support for Children". The agreement suggests that petitioner and intervenor were living at different addresses when it was signed.

In September 2017, however, intervenor moved into the new home with petitioner and the children although petitioner and intervenor lived in separate areas within the residence. In December 2017 intervenor learned that petitioner was in a relationship with another man. Around this time intervenor began to threaten petitioner that he would seek sole custody of the children. On January 2, 2018, petitioner requested and was granted a protection from abuse order against intervenor. Intervenor moved out of the home that same day.

On January 5, 2018, intervenor filed for divorce. In February 2020 petitioner and intervenor entered into a property settlement agreement and finalized their divorce. As relevant here, the property settlement agreement provides that (1) intervenor will be solely responsible for the unpaid tax liability for the year in issue if petitioner prevails in this action or (2) responsibility for the unpaid tax liability will be shared equally between petitioner and intervenor if petitioner does not prevail in this action.

Although petitioner and intervenor share equal custody of their children, intervenor is required to make monthly child support payments to petitioner. Intervenor has not met his child support obligations consistently.

## VII. Preparation and Filing of Tax Returns

While married, intervenor normally prepared and filed joint Federal income tax returns with petitioner.  In the normal course petitioner provided intervenor with her tax records, and intervenor prepared and filed the returns without her review.

### A. 2013 and 2014 Tax Returns

On December 12, 2017, intervenor mailed the couple's joint Federal income tax returns for 2013 and 2014 to the Internal Revenue Service (IRS).  Petitioner could not recall signing these tax returns.

For 2013 the couple reported an overpayment of $9,645, and they ostensibly elected to treat that overpayment as an estimated tax payment for 2014.[4]

For 2014 the couple reported total tax of $12,808, attributable to intervenor's various items of income, offset by an additional child tax credit of $3,000 and an estimated tax payment of $9,645 (i.e., the claimed overpayment from 2013), leaving a balance due of $163.

---

[4]Sec. 301.6402-3(a)(5), Proced. & Admin. Regs., provides in relevant part: "If the taxpayer indicates on its return (or amended return) that all or part of the overpayment shown by its return (or amended return) is to be applied to its estimated income tax for its succeeding taxable year, such indication shall constitute an election to so apply such overpayment".

B.  Denial of Claimed Overpayment

In February 2018 the IRS notified petitioner and intervenor that, because they filed their 2013 tax return more than three years after its original due date (i.e., April 2014), their claimed overpayment of $9,645 for 2013 had been disallowed pursuant to section 6511.  As a result of that adjustment, petitioner and intervenor were not entitled to the estimated tax payment of $9,645 that they had reported for 2014, leaving an unpaid balance for that year of $9,808 (exclusive of interest and penalties).

VIII.  Petitioner's Financial Challenges

A.  The Settlement Account

In April 2018 petitioner's settlement account was frozen in connection with the couple's divorce proceeding and some of intervenor's required child support payments were paid out of that account.  By the middle of 2019 there were no funds remaining in the settlement account.

B.  Sources of Income

In 2019 and 2020 petitioner earned modest amounts of income and in 2020 received Federal stimulus payments.  At the time of trial petitioner was receiving unemployment compensation.

C.  Petitioner's Home

The home that petitioner purchased in 2017 is encumbered by a home equity line of credit and is subject to a lien attributable to unpaid property tax.

D.  Other Indebtedness

Petitioner owes $160,000 to her cousin and $16,000 to her divorce attorney. In addition petitioner has outstanding credit card debt totaling approximately $100,000.

IX.  Tax Compliance

Petitioner has filed separate Federal income tax returns for the taxable years 2015 through 2020.  At the time of trial, petitioner had no outstanding tax liabilities for the taxable years 2015 through 2020.

X.  Petitioner's Claim for Spousal Relief

On June 1, 2018, the IRS received petitioner's Form 8857, Request for Innocent Spouse Relief, for the year in issue.  Petitioner stated on Form 8857 that she had not been abused by intervenor and that she did not have a mental or physical health problem when she completed the form or when the tax return for the year in issue was filed.  Petitioner reported that she was not receiving any income at that time and that her monthly expenses totaled $5,579.

Intervenor submitted Form 12508, Questionnaire for Non-Requesting Spouse, to the IRS opposing petitioner's claim for relief. Intervenor asserted that petitioner was fully aware of the unpaid tax for the year in issue and should not be relieved from joint and several liability given that she managed and controlled the settlement account and could have paid the tax liability for the year in issue when she first learned of the debt in 2018.

## Discussion

### I. Relief From Joint and Several Liability

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is jointly and severally liable for the entire tax due. Sec. 6013(d)(3). If certain requirements are met, however, an individual may be relieved of joint and several liability under section 6015.

In this case we apply a de novo scope and standard of review in deciding whether petitioner is entitled to relief under section 6015. See Porter v. Commissioner, 132 T.C. 203, 210 (2009). Although Congress recently added section 6015(e)(7) to clarify the scope and standard of our review in stand-alone innocent spouse cases, see Taxpayer First Act, Pub. L. No. 116-25, sec. 1203, 133 Stat. at 988 (2019), this new provision applies only to petitions filed in

this Court on or after July 1, 2019, and thus does not govern this case, which was commenced in March 2019, see Sutherland v. Commissioner, 155 T.C. 95, 104 (2020). Except as otherwise provided in section 6015, the taxpayer (requesting spouse) bears the burden of proving entitlement to relief. Rule 142(a); Porter v. Commissioner, 132 T.C. at 210.

Although there are three forms of relief under section 6015, we are concerned here with section 6015(f) which provides equitable relief from joint and several liability. In particular section 6015(f) grants the Commissioner discretion to relieve an individual from joint and several liability if, taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either).

The Commissioner has prescribed guidelines in Rev. Proc. 2013-34, 2013-43 I.R.B. 397, modifying and superseding Rev. Proc. 2003-61, 2003-2 C.B. 296, that are considered in determining whether it is inequitable to hold a requesting spouse liable for all or part of the liability for any unpaid tax or deficiency. Although the Court consults these guidelines when reviewing the Commissioner's denial of relief, see Washington v. Commissioner, 120 T.C. 137, 147-152 (2003), we are not bound by them because our analysis and determination ultimately turn

on an evaluation of all the facts and circumstances, see Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011).

## II. Threshold Conditions

Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399-400, sets forth seven threshold conditions that must be satisfied before the Commissioner will consider a request for equitable relief under section 6015(f). There is no dispute that petitioner satisfies the seven threshold conditions.

## III. Streamlined Determination

Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400, sets forth elements that a requesting spouse must satisfy to qualify for a streamlined determination under section 6015(f). Petitioner is not eligible for streamlined relief.

## IV. Facts and Circumstances Analysis

If a requesting spouse meets the threshold conditions for relief but fails to qualify for streamlined relief, relief may be warranted after consideration of the following nonexclusive list of factors set forth in Rev. Proc. 2013-34, sec. 4.03, 2013-43 I.R.B. at 400-403, including: (1) whether the requesting spouse is separated or divorced from the nonrequesting spouse; (2) whether the requesting spouse will suffer economic hardship if relief is not granted; (3) whether on the date the joint return was filed the requesting spouse did not know and had no

reason to know that the nonrequesting spouse would not or could not pay the tax liability; (4) whether the requesting or nonrequesting spouse has a legal obligation to pay the tax liability pursuant to a decree of divorce or other agreement; (5) whether the requesting spouse received a significant benefit from the unpaid income tax liability; and (6) whether the requesting spouse has made a good-faith effort to comply with Federal income tax laws for the taxable years following the taxable year to which the request for relief relates.

Considering all the facts and circumstances, we conclude that it would be inequitable to deny petitioner relief from joint and several liability in respect of the tax due for the year in issue. The factors that weigh most heavily in petitioner's favor are sufficiently straightforward that we see no need to proceed with a detailed evaluation of each of the factors outlined in Rev. Proc. 2013-34, sec. 4.03. Rather, we will summarize the factors that lead the Court to grant petitioner relief.

It is worth noting here that in preparing this case for trial, respondent reconsidered and concluded that petitioner's claim for relief should be granted. Additionally, when given the chance, intervenor had little to offer the Court in support of his opposition to petitioner's claim for relief. Intervenor's primary complaint is that petitioner could have used funds in the settlement account to pay

the couple's tax liability for the year in issue when she first learned about the underpayment in early 2018.

In concluding that petitioner is entitled to spousal relief, we are persuaded that she would suffer economic hardship if obliged to pay the tax due for the year in issue. In addition, we conclude that petitioner did not know and had no reason to know that intervenor would not or could not pay the tax due on the date the return was filed.

A requesting spouse will suffer economic hardship if payment of part or all of the tax liability "will cause the requesting spouse to be unable to pay reasonable basic living expenses." Rev. Proc. 2013-34, sec. 4.03(2)(b), 2013-43 I.R.B. at 401; see sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs. While it appears that petitioner has a fair amount of equity in the home that she purchased in 2017, the funds in the settlement account have been exhausted, she has accrued significant debts (including credit card debt, unpaid property tax, an outstanding loan from her cousin, and unpaid legal fees), and her monthly living expenses (none of which appear to be lavish or extravagant) exceed her monthly income. To make matters worse, petitioner's current employment prospects strike the Court as fairly limited, and it is highly unlikely that she will be able to improve her financial condition in any meaningful way, at least in the near term. Under the circumstances, requiring

petitioner to pay the tax due for the year in issue would cause economic hardship, leaving her unable to pay reasonable basic living expenses for herself and her children.

In the case of an underpayment of tax we normally consider whether, as of the date the return was filed or the date the requesting spouse reasonably believed the return was filed, the requesting spouse knew or had reason to know that the nonrequesting spouse would not or could not pay the tax at that time or within a reasonable time after filing the return. Rev. Proc. 2013-34, sec. 4.03(2)(c)(ii).

Petitioner could not recall signing the tax return for 2013 or 2014, and it is unclear whether she knew that intervenor had filed those returns with the IRS in the latter half of 2017. In any event we are persuaded on this record that petitioner did not know and had no reason to know that intervenor would not pay the tax due for 2014 when the return was filed. Even assuming for the sake of argument that petitioner had reviewed the 2014 return before it was filed, that return reported tax due of $163, after accounting for a child tax credit and the claimed estimated tax payment. We conclude that petitioner did not have the financial acumen or familiarity with tax matters to recognize or even begin to contemplate that the estimated tax payment reported on the return (i.e., the overpayment carried over from 2013) was time barred pursuant to section 6511. Consequently, we decline to

charge petitioner with knowing or having a reason to know that intervenor would not or could not pay the tax due for the year in issue.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.